## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE ASSOCIATED PRESS,
    200 Liberty Street
    New York, NY 10281,

               Plaintiff,

v.

TAYLOR BUDOWICH,
in his official capacity as
White House Deputy Chief of Staff
    1600 Pennsylvania Avenue NW
    Washington, DC 20500,

KAROLINE LEAVITT
in her official capacity as
White House Press Secretary
    1600 Pennsylvania Avenue NW
    Washington, DC 20500,

and

SUSAN WILES,
in her official capacity as
White House Chief of Staff
    1600 Pennsylvania Avenue NW
    Washington, DC 20500,

               Defendants.

Case No. _____

**Emergency Hearing Requested**

## COMPLAINT

      Plaintiff The Associated Press ("the AP") brings this suit against Defendants Taylor

Budowich, Karoline Leavitt and Susan Wiles, each in their official capacities, and states as

follows:

### INTRODUCTION

      1.     The White House has ordered The Associated Press to use certain words in its

coverage or else face an indefinite denial of access.  The press and all people in the United States

have the right to choose their own words and not be retaliated against by the government.  The
Constitution does not allow the government to control speech.  Allowing such government
control and retaliation to stand is a threat to every American's freedom.

2.      The AP therefore brings this action to vindicate its rights to the editorial
independence guaranteed by the United States Constitution and to prevent the Executive Branch
from coercing journalists to report the news using only government-approved language.

3.      The AP is one of the world's oldest and most trusted news organizations.  Since
its inception in 1846, the AP, which is a not-for-profit organization, has been known for its
accurate, factual, and nonpartisan reporting, including on the President of the United States and
the White House.  The AP's journalism reaches four billion people per day via major news
outlets around the world, whatever their political orientation, and has received 59 Pulitzer Prizes
for its courageous coverage of key moments of world history.

4.      The AP has participated in the White House press pool since its creation over a
century ago, which has made it possible for the AP to deliver to the public timely and thorough
reporting on the President almost everywhere he goes, which is information critical to the public.

5.      On February 11, 2025, without prior notice, White House officials informed the
AP that it would be barred from entering certain areas in the White House as a member of the
press pool unless the AP began referring to the Gulf of Mexico as the Gulf of America, following
President Trump's renaming of that body of water in Executive Order 14172.  The White House
began banning AP journalists from events open to the press pool within hours.

6.      The White House's actions were taken in response to an editorial decision by the
AP to refer to the Gulf of Mexico "by its original name *while acknowledging the new name*

*Trump has chosen*."[1]  The AP explained in its AP Stylebook, which embodies the AP's editorial standards, that, "[a]s a global news agency that disseminates news around the world, the AP must ensure that place names and geography are easily recognizable to all audiences."

7.     On February 14, the White House made its ban of the AP indefinite, announcing on X (formerly Twitter) that, because the AP had not complied with its demand to use the name Gulf of America, AP journalists were now indefinitely banned from "access to limited spaces, like the Oval Office and Air Force One."  To date, the AP's reporters and photographers remain banned from the Oval Office, Air Force One, and other locations open not only to pool members, but also to a larger group of journalists with White House press credentials.

8.     In an email to the AP on February 18, 2025, White House Chief of Staff Susan Wiles explained "why we arrived in this point."  Wiles wrote that the White House was targeting the AP because its Stylebook "is used by many as a standard for writing and editing," and that it "advises journalists, scholars and classrooms around our country."  Wiles finished her email by noting, "we remain hopeful that the name of the [Gulf] will be appropriately reflected in the Stylebook where American audiences are concerned," implying that the AP could change its guidance as to American audiences to resolve the issue and restore its access.

9.     President Trump has since doubled down on his Administration's targeting of the AP, saying, "[w]e're going to keep them out until such time that they agree that it's the Gulf of

---

[1] Amanda Barrett, *AP Style Guidance on Gulf of Mexico, Mount McKinley*, AP (Jan. 23, 2025), https://www.ap.org/the-definitive-source/announcements/ap-style-guidance-on-gulf-of-mexico-mount-mckinley (emphasis added).

America" and that the AP "has been very, very wrong on the election, on Trump and the treatment of Trump."[2]

10.    This Court should order that the government immediately cease its retaliatory actions against the AP, retaliation which is based solely on the content of the AP's speech, and rescind its denial of the AP's access to the Oval Office, Air Force One, and other limited spaces when such spaces are made open to other members of the White House press pool.

11.    The ban violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution.  As the D.C. Circuit has made clear, journalists' "first amendment interest" in access to the White House "undoubtedly qualifies as liberty which may not be denied without due process of law under the fifth amendment."  *Sherrill v. Knight*, 569 F.2d 124, 130-31 (D.C. Cir. 1977).  Defendants gave the AP no prior or written notice of, and no formal opportunity to challenge, their arbitrary determination that the AP would indefinitely lose access to the Oval Office, Air Force One, and other limited areas as a member of the press pool – as well as access to larger locations open to a wider group of journalists and reporters with White House press credentials – unless the AP adopted the Administration's preferred language in its reporting.

12.    The ban also violates the First Amendment to the U.S. Constitution.  The D.C. Circuit has made clear that denying journalists access to White House press events "based upon the content of the journalist's speech" is "prohibited under the first amendment."  *Sherrill*, 569 F.2d at 129.  Having opened the White House and certain areas to the press, the First Amendment "requires that this <u>access not be denied</u> arbitrarily or for less than compelling

---

[2] *See, e.g.*, David Bauder, *Trump Says AP Will Continue to Be Curtailed at White House Until It Changes Style to Gulf of America*, AP (Feb. 18, 2025), https://apnews.com/article/trump-ap-white-house-press-corps-pool-91535a6384d681fee1cd7e384ea6c627; *Trump Restricts AP Access Over Gulf of Mexico Issue*, Reuters (Feb. 18, 2025), https://www.reuters.com/world/us/trump-restricts-ap-access-over-gulf-mexico-issue-2025-02-19/.

reasons." *Ateba v. Jean-Pierre*, 706 F. Supp. 3d 63, 75-76 (D.D.C. 2023) (quoting *Sherrill*, 569 F.2d at 129) (emphasis in original), *appeal argued*, No. 24-5004 (D.C. Cir. Oct. 15, 2024). Defendants have not provided, nor could they provide, any compelling reason for their arbitrary denial of the AP's access. Rather, Defendants' actions are impermissibly based on their dislike of the content of the AP's expression and what they perceive as the AP's viewpoint reflected in the content of its expression. The White House ban of the AP also constitutes impermissible retaliation, as it was instituted to punish the AP for its constitutionally protected speech in ways that would chill the speech of a reasonable person of ordinary firmness.

13.    After making several unsuccessful efforts to persuade Defendants that their conduct is contrary to well-established law, the AP now brings this action to vindicate its constitutional rights, restore its access to the White House, and ensure that the press remains free to report on the Administration without fear of selective, arbitrary denials of access.

## PARTIES

14.    Plaintiff the AP is a not-for-profit news cooperative organized under the laws of the State of New York. The AP is one of the world's most trusted news sources, reaching four billion people per day, including with its coverage of the White House.

15.    Defendant Taylor Budowich is the White House Deputy Chief of Staff. He is sued in his official capacity.

16.    Defendant Karoline Leavitt is the White House Press Secretary. She is sued in her official capacity.

17.    Defendant Susan Wiles is the White House Chief of Staff. She is sued in her official capacity.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

19.     Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).  A substantial part of the events giving rise to this action occurred in this district, and Defendants are officers of the United States sued in their official capacities.

## FACTUAL BACKGROUND

### The White House Press Pool

20.     The White House press pool consists of journalists who regularly report to the public about the President, the White House, and other Executive Branch activity in Washington, DC and globally.  The press pool accompanies the President almost everywhere he goes, ensuring that the public is informed of his activity and that the President and his administration are held accountable to the public.

21.     Because there often is not enough space in the Oval Office or on Air Force One to accommodate every journalist who covers the President, a minimum 13-person press pool serves as the eyes and ears of the full press corps, and of the public.

22.     In all of its permutations the press pool consists of, at minimum, three wire reporters (one each from the AP, Reuters, and Bloomberg), four photographers (one each from the AP, Reuters, AFP, and The New York Times), three network television journalists, a radio correspondent, and at least one print reporter.  Membership in the pool is determined at the sole discretion of the White House Correspondents Association (WHCA) and the press corps itself. *See, e.g.*, https://whca.press/covering-the-white-house/resources/guide-to-the-white-house-beat/.

23.     On information and belief, the White House has never interfered with the WHCA and White House press corps' prerogative to determine the organizations that make up the White House press pool.

24.     In circumstances when logistics dictate that the full press pool cannot accompany the President, such as during President Biden's secret trip to Kyiv in 2023 or President Trump's secret trip from Palm Beach to Joint Base Andrews to begin a secret trip to Afghanistan in 2019, the WHCA—not the White House—determines the membership of an even more narrowly limited temporary pool.

25.     Conversely, when logistics permit more journalists to accompany the President, the WHCA determines the membership of an expanded pool, such as during press events held in large spaces, including the White House East Room, and the White House admits additional journalists.

26.     The AP has been a member of the White House press pool since the pool's inception well over a century ago, and as a result, has been able to report to the public first-hand on some of history's most defining events.  In fact, an AP reporter became the first recorded presidential "pooler" in 1881, providing updates to fellow reporters from his post outside the White House sick room of President James A. Garfield after he was shot.  AP pool journalists were also in the motorcade in Dallas when President John F. Kennedy, Jr. was assassinated, providing the nation with contemporaneous, fact-based reporting as the story developed, and as conspiracy theories spread.  And, AP journalists were in the pool with President George W. Bush when he learned of the September 11 terrorist attacks during an event in Florida, and they accompanied him on Air Force One to secure locations in Louisiana and Nebraska and back to

Washington.  Pool members like the wire services have the broadest reach and thus the information they report gets to the widest possible audience.

27.     As a participant in the White House press pool, the AP has long provided at least two White House-credentialed journalists—one text reporter and one photographer—to the Oval Office and other areas of the White House when events open to the press are held in those areas.

28.     The AP has also long sent one text reporter and one photographer to travel with the President in the 13-seat press pool on Air Force One.

29.     Full access to places and events to which other members of the press pool are admitted is essential to the AP's ability to provide the public with fast, accurate, and comprehensive coverage of the President and his administration.  When the AP is denied access, the thousands of global news outlets that republish the AP's news reports, and the billions of people that rely on its reporting, also are denied access.

**<u>The White House Attempts to Control the AP's Speech</u>**

30.     Upon information and belief, the White House has never before attempted to bar an entire news organization from membership in the press pool and from accessing those spaces open to other members of the pool.

31.     During the prior Trump Administration, the White House had targeted the press by revoking the "hard pass" press credentials of two White House correspondents, CNN's Jim Acosta and Playboy's Brian Karem, but had not barred all journalists at those organizations from accessing events open to the White House press corps.  Those access denials were held unlawful by this Court.

32.      On the morning of February 11, 2025, White House Press Secretary Karoline Leavitt summoned AP Chief White House Correspondent Zeke Miller to her office.  She told him that, at President Trump's direction, the AP would no longer be permitted in the Oval Office

as part of the press pool until and unless AP revised its Stylebook to refer to the body of water known for hundreds of years as the Gulf of Mexico as the Gulf of America. Leavitt provided no other reason for the decision other than to compel the AP to change the language of its reporting, nor did she object to any particular conduct by Miller or any other AP journalist.

33.    Leavitt's proclamation followed an executive order President Trump had issued on January 20, 2025, renaming the Gulf of Mexico as the Gulf of America. Exec. Order No. 14172. By its own terms, the Executive Order applied only to those portions of the Gulf within the United States. The body of water also borders Mexico and Cuba. It has been known as the Gulf of Mexico for over 400 years and remains known internationally as the Gulf of Mexico.

34.    On January 23, the AP announced that the organization would refer to the Gulf of Mexico "by its original name *while acknowledging the new name Trump has chosen*."[3]  The AP explained that, "[a]s a global news agency that disseminates news around the world, the AP must ensure that place names and geography are easily recognizable to all audiences." The AP added that it "regularly reviews its style guidance regarding name changes, in part to ensure its guidance reflects common usage," and would do so here. It also noted that the AP would "make updates as needed."

35.    In the same guidance, the AP noted that President Trump's January 20, 2025 Executive Order had also renamed North America's tallest mountain to Mount McKinley from Denali, undoing a 2015 name change issued by Secretary of the Interior Sally Jewell during the Obama Administration. *See* Dep't of the Interior Order No. 3337 (Aug. 28, 2015). The AP announced that it would follow this name change because the mountain is entirely within the United States and therefore under the federal government's renaming authority.

---

[3] Barrett, *AP Style Guidance*, *supra* (emphasis added).

36. The AP, however, abided by its carefully considered standards decision when Leavitt made her February 11, 2025 demand that, with respect to the Gulf, it must begin using only the Gulf of America name.

37. Later on the afternoon of February 11, however, White House staff barred the AP's text journalist from attending a presidential executive order signing and press conference with Elon Musk in the Oval Office, which was open to the press pool. The AP's photographer was allowed to attend.

38. AP Executive Editor Julie Pace published a statement that same day objecting to the White House's actions. Pace wrote that "[l]imiting our access to the Oval Office based on the content of AP's speech not only severely impedes the public's access to independent news, it plainly violates the First Amendment."[4]

39. That night, another AP reporter was barred from an event in the Diplomatic Reception Room that was open to the press pool, as the President welcomed home an American freed in a prisoner exchange with Russia. The AP's photographer was not barred.

40. On February 12, 2025, Pace sent a letter to White House Chief of Staff Susan Wiles, objecting to these denials of access, which "were plainly intended to punish the AP for the content of its speech" in violation of the AP's constitutional rights. The AP "strongly urge[d] the administration to end this practice" and offered to meet to discuss the matter in person.[5]

41. Also on February 12, Leavitt defended the White House's actions during a press briefing and stated that the AP was telling "lies" by using the Gulf of Mexico name. That

---

[4] Lauren Easton, *AP Statement on Oval Office Access*, AP (Feb. 11, 2025), https://www.ap.org/the-definitive-source/announcements/ap-statement-on-oval-office-access.

[5] @katie_robertson, X (Feb. 12, 2025), https://x.com/katie_robertson/status/1889739177169670148.

afternoon, the AP was barred from an Oval Office press conference during the swearing-in of Director of National Intelligence Tulsi Gabbard.

42.     On February 13, 2025, the AP was barred from a White House East Room press conference held by President Trump and Indian Prime Minister Narendra Modi, which was open to other members of the press pool and other journalists with White House press credentials. AP reporter Miller had submitted an RSVP for the event but was barred from attending.  At least one journalist from another news organization who did not RSVP was provided access.  The East Room is one of the largest event spaces at the White House, and can accommodate dozens of journalists, as it did for this event.

43.     That same day, Pace issued a statement again objecting to the AP's "deeply troubling" exclusion and "urg[ing] the Trump administration in the strongest terms to stop this practice."  Pace wrote that "[t]his is now the third day AP reporters have been barred from covering the president—first as a member of the pool, and now from a formal press conference—an incredible disservice to the billions of people who rely on The Associated Press for nonpartisan news."[6] Also on February 13, 2025, Pace sent an email to Wiles objecting again to the White House's actions against the AP.

44.     On February 14, 2025, White House Deputy Chief of Staff Taylor Budowich publicly announced that, because the AP would not use the Gulf of America name, AP journalists were now indefinitely barred from "access to limited spaces, like the Oval Office and Air Force One."  Budowich stated that AP "journalists and photographers will retain their

---

[6] *White House Blocks AP Reporter from Trump-Modi News Conference Because of Gulf of Mexico Fight*, AP (Feb. 13, 2025), https://apnews.com/article/ap-white-house-gulf-name-dispute-media-864f2fbb5cfaeede009d7cea5788515b.

credentials to the White House complex."  Budowich's statement further claimed that the AP had a "commitment to misinformation" and published "irresponsible and dishonest reporting."[7]  That same day, Pace sent another email to Wiles again objecting to the White House's actions.

45.    On February 15, 2025, White House Deputy Chief of Staff Stephen Miller suggested further punishing the AP by revoking its White House access entirely.[8]  While this has not occurred to date, his statement further evidences the White House's clear intent to target the AP for the content of its speech.  The following day, February 16, Pace sent another email to Wiles objecting to the continued denial of access for the AP.

46.    On the morning of February 18, five days after receiving the AP's letter protesting the White House's actions, Wiles responded.  Wiles wrote that "[t]here is no event that the Associated Press is being barred from covering," a statement that is plainly false given the AP's exclusion from President Trump's press conference with Prime Minister Modi.  Wiles also wrote that the White House's "view as to why we arrived in this point" is that "the influence" the AP's "Stylebook has acquired has been misused, and at times weaponized, to push a divisive and partisan agenda."  Wiles further stated that, as to the Gulf of Mexico specifically, White House officials "of course[] recognize that this renaming may not formally apply yet internationally," but Wiles nevertheless insisted that "given the AP's role, it should also appropriately make the distinction as an American guideline."

47.    Later that same day, President Trump confirmed that his Administration would continue denying the AP access based on its journalism, remarking of the AP, "[w]e're going to keep them out until such time that they agree that it's the Gulf of America."  The President then

---

[7] @Taylor47, X (Feb. 14, 2025), https://x.com/Taylor47/status/1890453490398326919.

[8] @StephenM, X (Feb. 15, 2025), https://x.com/StephenM/status/1890948850505945264.

lambasted the AP, stating that the AP "has been very, very wrong on the election, on Trump and the treatment of Trump" and that "they're doing us no favors and I'm not doing them any favors."  President Trump made these statements at a Mar-a-Lago press conference from which AP reporters were barred, even though the AP had requested access from Leavitt and other White House officials and from security staff on site at Mar-a-Lago.

48.    On February 19, 2025, in a final effort to reach a resolution of this matter short of litigation, Pace traveled to Miami, Florida, on one day's notice to meet with Wiles.  The meeting did not result in the White House ceasing its restrictions on the AP's access.  Instead, Wiles continued to insist that the AP must revise its Stylebook to adopt Gulf of America without qualification.  Wiles informed Pace that she would discuss the matter with President Trump that evening and follow up with her, but to date, the AP has not heard further from Wiles.

49.    On February 20, 2025, an AP reporter and two AP photographers were barred from accessing a Black History Month reception held in the East Room—a large event that was open to the press pool and other credentialed members of the White House press corps.  That evening, an AP reporter and photographer were barred from joining the remainder of the press pool in the President's motorcade to cover his attendance at a dinner hosted by the Republican Governors Association.  An AP Radio reporter, selected by his colleagues as the designated pooler for that format in the pool for events that day, was also barred from providing coverage of the day's events.

50.    Speaking at the Republican Governors Association dinner, President Trump emphasized that the White House is "holding [the AP] out of any news conferences" because of how the AP refers to the Gulf of Mexico, and he even predicted this very case, remarking that the

possibility of the AP prevailing in such a lawsuit "doesn't matter" because the effort to coerce the AP into using the government's preferred words "is something we feel strongly about."[9]

51.     On information and belief, all other non-rotating, organizational members of the press pool have, like the AP, continued to use the Gulf of Mexico name, while noting President Trump's Executive Order.  The White House has not barred any of those other news organizations from the press pool as a result of their expression, underscoring the Administration's particular animus toward and retaliation against the AP.

52.     Since February 14, 2025, AP print and photojournalists have remained barred from the Oval Office, Air Force One, and other locations otherwise open to the White House press pool, as well as other events that have been open to the broader White House press corps.

53.     The White House has not provided the AP with any formal notice of the reasons for, formal opportunity to be heard regarding, or meaningful opportunity to challenge the White House's decision to bar the AP from the press pool, Oval Office, Air Force One, and other limited areas.

54.     The White House's indefinite denial of the AP's access was based on the content and perceived viewpoint of the AP's reporting and editorial decisions, and constituted impermissible retaliation against the AP based on its constitutionally protected activity in ways that would chill the speech of similarly situated reasonable individuals.

---

[9] *President Trump Remarks at Republican Governors Association*, C-SPAN (Feb. 20, 2025), https://www.c-span.org/program/white-house-event/president-trump-remarks-at-republican-governors-association/656015, at 46:16-46:43.

## CLAIMS FOR RELIEF

### Count I
### Declaratory and Injunctive Relief:
### <u>Violation of the Fifth Amendment</u>

55.     The AP realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

56.     Defendants' decision to indefinitely ban the AP from "access to limited spaces, like the Oval Office and Air Force One" open to members of the White House press pool, violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution.  Because the White House has made those spaces available to other members of the pool, it cannot constitutionally deny the AP's access without due process of law, and cannot deny access so arbitrarily or for anything other than legitimate, compelling reasons.

57.     The AP's access as a member of the press pool to the Oval Office, Air Force One, and the other limited spaces—which the White House has now revoked indefinitely—is protected by the First and Fifth Amendments.  Being a member of the press pool and reporting from these spaces has, for over a century, allowed the AP to effectively and timely report on the President and White House, information which is critical to an informed public.  The indefinite denial of the AP's access hinders its ability to provide timely, accurate and nonpartisan reporting on the President and White House to the thousands of global news outlets that republish the AP's news reports and to billions of readers globally.

58.     The White House's decision to deny the AP's access was arbitrary.  The AP received no prior notice of the White House's decision.  Leavitt announced the decision verbally, after it had been made, to AP Chief White House Correspondent Miller.  The AP received no written notice of the White House's decision.

59.     Defendants did not provide to the AP any opportunity to challenge their decision before it took effect, nor have Defendants provided to the AP any formal opportunity to challenge it since that time.  Instead, the Administration repeatedly has made clear that it intends to continue barring the AP's access indefinitely unless the AP uses the Administration's preferred language.

60.     As a result of Defendants' actions, the AP has suffered and continues to suffer irreparable harm.

**Count II**
**Declaratory and Injunctive Relief:**
**Violation of the First Amendment**

61.     The AP realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

62.     The White House has ordered the AP to use certain words in its coverage or else be barred from accessing events open to the White House press pool, as direct retaliation for the AP's speech.  Defendants' decision to bar the AP from reporting in the White House press pool and to deny the AP's access to the Oval Office, Air Force One, and other limited areas, as well as other events that have been open to the broader White House press corps, violates the First Amendment to the U.S. Constitution.  The AP's access to and reporting on the White House as a member of the press pool, and the AP's own editorial decisions about naming conventions, are protected under the First Amendment.

63.     Defendants have deprived the AP of its right as a member of the White House press pool to access limited areas in the White House that have been opened to the press pool as representatives of the press and public.  This attempt to control speech has the impact of depriving the thousands of global news outlets that republish the AP's news reports, and its

billions of readers around the world, from the AP's factual, timely and nonpartisan reporting on the White House.

64.     Defendants have admitted that they acted against the AP based on their dislike of the AP's use of the Gulf of Mexico name and its other editorial choices.  The law does not allow the government to control speech based on its likes and dislikes.  Such dislike is not a compelling reason to justify the infringement of the AP's First Amendment rights, and it is not narrowly tailored to achieve any compelling government interest.

65.     Defendants' actions against the AP expressly were taken because of the language the AP uses in its reporting and Stylebook, constituting content- and viewpoint-based discrimination.

66.     Defendants' actions against the AP were in retaliation for the AP's exercise of its First Amendment-protected rights of expression.  The access denial was intended to have, and has had, a chilling effect on the exercise of the AP's First Amendment rights.  Defendants' acts would chill, and have chilled, the speech of similarly situated reasonable people of ordinary firmness.

67.     Defendants' access denial is also intended to compel the speech of the AP, specifically to make the Gulf of America the primary term used in its reporting and Stylebook.

68.     As a result of Defendants' actions, the AP has suffered and continues to suffer irreparable harm.

**PRAYER FOR RELIEF**

WHEREFORE, the AP respectfully requests that this Court:

a.    Order the Defendants to immediately rescind their denial of the AP's access to the

Oval Office, Air Force One, and other limited spaces when such spaces are made open to other

White House press pool members;

b.    Declare that the Defendants' conduct in denying the AP access to spaces open to

other members of the White House press pool violated the First and Fifth Amendments;

c.    Award to the AP its costs and reasonable attorneys' fees incurred in this action;

and

d.    Grant such further relief as the Court may deem just and proper.

## JURY DEMAND

The AP hereby demands a jury trial.


Dated:  February 21, 2025                    Respectfully submitted,

                                            BALLARD SPAHR LLP

                                            */s/ Jay Ward Brown*
                                            Jay Ward Brown (#437686)
                                            Charles D. Tobin (#83626)
                                            Maxwell S. Mishkin (#1031356)
                                            1909 K Street NW, 12th Floor
                                            Washington, DC 20006
                                            Tel: (202) 661-2200
                                            Fax: (202) 661-2299
                                            brownjay@ballardspahr.com
                                            tobinc@ballardspahr.com
                                            mishkinm@ballardspahr.com

                                            Sasha Dudding (#1735532)
                                            1675 Broadway, 19th Floor
                                            New York, NY 10019
                                            Tel: (212) 223-0200
                                            Fax: (212) 223-1942
                                            duddings@ballardspahr.com

                                            *Counsel for Plaintiff The Associated Press*