**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE ASSOCIATED PRESS,<br><br>       *Plaintiff*,<br><br>v.<br><br>TAYLOR BUDOWICH, in his official capacity as White House Deputy Chief of Staff; KAROLINE LEAVITT, in her official capacity as White House Press Secretary; and SUSAN WILES, in her official capacity as White House Chief of Staff,<br><br>       *Defendants*. | Case No. 1:25-cv-00532-TNM<br><br>Hon. Trevor N. McFadden |

**BRIEF OF THE WHITE HOUSE CORRESPONDENTS' ASSOCIATION AS
AMICUS CURIAE IN SUPPORT OF PLAINTIFF THE ASSOCIATED PRESS'S
MOTIONS FOR TEMPORARY RESTRAINING ORDER
<u>AND PRELIMINARY INJUNCTION</u>**

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Local Rule 7(o)(5) and Federal Rule of Appellate Procedure 29(a)(4)(A), the White House Correspondents' Association certifies that it is a nonprofit 501(c)(3) organization with no parent company, no subsidiaries, and no stock.

**RULE 29(a)(4)(E) CERTIFICATION**

Pursuant to Local Rule 7(o)(5) and Federal Rule of Appellate Procedure 29(a)(4)(E), the White House Correspondents' Association certifies that its counsel, Williams & Connolly LLP, authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person—other than the White House Correspondents' Association, its members, or counsel—contributed money that was intended to fund preparing or submitting the brief.

**TABLE OF CONTENTS**

IDENTITY AND INTEREST OF AMICUS CURIAE ................................................................... 1

SUMMARY OF ARGUMENT ...................................................................................................... 2

ARGUMENT .................................................................................................................................. 2

I.      The Press Provides Independent Coverage of the Presidency, Which Is Essential for Maintaining an Informed Citizenry in a Democracy. ..................................................... 2

      A.      The White House Press Corps Is Made Up of Separate, Independent News Organizations that Together Serve All of America. ................................................ 3

      B.      The Rotating White House Pool Is Responsible for Informing the Press at Large, and the Public, About the President's Activities. ........................................... 4

II.     The White House's Exclusion of any News Organization Has a Chilling Effect on the Press, Which Impairs the Press's Ability to Serve Its Democratic Role. ...................... 6

CONCLUSION ............................................................................................................................... 7

## TABLE OF AUTHORITIES

**CASES**

*Booth v. Bowser*, 597 F. Supp. 3d 1 (D.D.C. 2022)..........................................................................8

*\*Grosjean v. American Press Co.*, 297 U.S. 233 (1936)..........................................................2, 3, 7

*Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241 (1974)................................................................6

*Mills v. Alabama*, 384 U.S. 214 (1966) ...........................................................................................2

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020)..................................................8

*\*Sherrill v. Knight*, 569 F.2d 124 (D.C. Cir. 1977) .....................................................................3, 7

*\*Authorities upon which counsel chiefly rely are marked with asterisks.*

**IDENTITY AND INTEREST OF AMICUS CURIAE**

Amicus curiae is the White House Correspondents' Association ("WHCA"), a nonprofit association incorporated in the District of Columbia, whose primary mission is to advocate for the newsgathering rights of the press on behalf of journalists who cover the White House and on behalf of Americans who rely on the press to provide information about the activities of their elected officials.[1] Founded more than 100 years ago, the WHCA has consistently and effectively worked to ensure that the individuals who gather and report the news from the White House can seek answers from powerful officials, including the President of the United States.

The WHCA is an independent, self-organized association of journalists who cover the White House on a full- or part-time basis. The WHCA has nearly 800 members, who together represent nearly 300 news organizations. Since the Eisenhower administration, the WHCA has coordinated logistics related to the White House press pool and briefing room. In so doing, the WHCA has, for more than a dozen presidential administrations, served as a bulwark against government influence over White House news coverage.

Amicus WHCA submits this brief in support of The Associated Press ("AP") to inform the Court of how the exclusion of news organizations based on editorial disagreements not only violates the First and Fifth Amendments—as the AP has argued in its motions, ECF Nos. 2, 3—but also impairs other journalists' coverage of the White House and undermines a well-functioning democracy.

---

[1] The WHCA has obtained consent to file this brief from the Court and therefore may file it pursuant to Local Rule 7(o)(1).

**SUMMARY OF ARGUMENT**

The WHCA's members hold a variety of editorial viewpoints and perspectives, but the WHCA is united in its shared belief that an independent news media is vital to the health of the republic. When government officials interfere with or otherwise punish those viewpoints by restricting the press from performing its newsgathering activities, they infringe on the First Amendment rights of the people and the press, and jeopardize our democratic form of government. But the harms go beyond any one excluded news organization, as such conduct will chill and distort news coverage of the President to the public's detriment. *See, e.g., Grosjean v. American Press Co.*, 297 U.S. 233, 250 (1936) ("A free press stands as one of the great interpreters between the government and the people. To allow it to be fettered is to fetter ourselves.").

To understand the multitude of harms inflicted by the White House's exclusion of a news organization from press pool coverage, it is critical to understand the press pool's operation and the role it plays in reporting news to the broader public. Two points are key. First, the WHCA's membership covers the White House effectively *because* of its members' independence from political interference and the logistical support provided by the WHCA. Second, the retaliatory and viewpoint-based exclusion of a White House pool member threatens the integrity of the White House press corps and its first-line coverage of the American presidency. Because of the free speech and democratic interests at stake, the WHCA urges the Court to prohibit any type of exclusionary conduct based on a news organization's viewpoints.

**ARGUMENT**

**I.   The Press Provides Independent Coverage of the Presidency, Which Is Essential for Maintaining an Informed Citizenry in a Democracy.**

It is fundamental that an "informed public . . . is the most potent of all restraints upon misgovernment," served by an "untrammeled press as a vital source of public information."

2

*Grosjean*, 297 U.S. at 250.  As the Supreme Court has stated, "the press serves and was designed to serve as a powerful antidote to any abuses of power by governmental officials and as a constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve." *Mills v. Alabama*, 384 U.S. 214, 219 (1966).  For that reason, "[n]ot only newsmen and the publications for which they write, but also the public at large have an interest protected by the first amendment in assuring that restrictions on newsgathering be no more arduous than necessary, and that individual newsmen not be arbitrarily excluded from sources of information." *Sherrill v. Knight*, 569 F.2d 124, 129–30 (D.C. Cir. 1977).

The existence and operation of an independent White House press corps, including an independent White House press pool, are consistent with that constitutional function of "shed[ding] . . . light on the public . . . affairs of the nation." *Grosjean*, 297 U.S. at 250.  For the public to be well-informed of the President's exercise of his authority, the press must have access to his public-facing work in and outside the White House.  Over many presidential administrations, members of the White House press corps have independently cooperated to navigate the logistical challenges of the beat, including by independently operating a press pool to ensure coverage of the President even in tightly-controlled spaces.

> A. **The White House Press Corps Is Made Up of Separate, Independent News Organizations that Together Serve All of America.**

The White House press corps is representative of America's larger media landscape.  For example, different types of media are represented, including wire services (*e.g.*, the AP, Reuters, and Bloomberg), television networks (*e.g.,* ABC, Fox, CBS, Newsmax), print outlets (*e.g.*, The New York Times, the New York Post, The Wall Street Journal,), radio broadcasters (*e.g.*, ABC News Radio, Fox News Radio), and internet publications (*e.g.*, the Daily Mail and the Daily Caller).  There are legacy organizations that have been around for two centuries (*e.g.*, The

3

Washington Post), and newer outlets that have been around for two decades (*e.g.*, the Washington Examiner). These entities serve smaller local and regional audiences (*e.g.*, the members of Regional Reporters Association), large cities (*e.g.*, Dallas Morning News and Boston Globe), and the whole nation (*e.g.*, USA Today). Also represented are the business press (*e.g.*, Bloomberg and the Financial Times), Spanish language media (*e.g.*, Univision), and religious media (*e.g.*, Eternal World Television Network). These entities differ in who their audiences are, what editorial standards and perspectives they adopt, and who they may endorse for elected office (if they make any endorsement at all).

With one exception, none of these news organizations that regularly cover the White House are U.S. government-owned.[2] And all are editorially independent of the executive branch. No matter the administration or its political proclivities, the press corps has consistently resisted efforts by the White House to single out members of the press for punishment on the basis of their coverage.[3]

> **B.     The Rotating White House Pool Is Responsible for Informing the Press at Large, and the Public, About the President's Activities.**

Because it would be impossible to have hundreds of reporters follow the President everywhere he goes or squeeze into the Oval Office, the White House press corps has devised a system where a semi-rotating group of reporters share the responsibility of "cover[ing] the

---

[2] Voice of America ("VOA") exists as part of an executive agency. However, VOA maintains a "firewall" of editorial independence. Voice of America, VOA and the Firewall – Law for More than 40 Years (July 2, 2019) https://bit.ly/41tANny.

[3] For example, in 2009, the Obama White House sought to exclude Fox News from participating in round of press pool interviews with a Treasury official. Reporters Committee for Freedom of the Press, White House attempted to shut out Fox News reporter (Oct. 23, 2009) https://bit.ly/41rkZ4F. The Obama White House relented after other members of the pool boycotted the interviews. *Id.*

4

commander-in-chief on behalf of the broader corps of correspondents." WHCA, Covering the White House, https://bit.ly/3Xd9w6g. Working as the broader press's proxy, this pool issues "pool reports" that become "part of the historical record and are used instantly by a myriad of news outlets" to form the foundation for stories published across the country and the world. WHCA, Guide to the White House Beat (April 2023), https://bit.ly/3CSOa7v (noting that pool reporting "may be quoted or published verbatim, and without attribution" by recipient news outlets). Because of both the serious responsibility and significant financial commitment involved in being a pool member, the journalists who make up the WHCA are careful to select pool representatives that serve large and diverse audiences and that reliably produce reports that are "timely and factual, with quotes and color," and that "reflect fairness, objectivity and good taste." *Id.*

Although the size of the pool "depends on where the President is," thirteen members are consistently permitted to attend smaller White House events, accompany the presidential motorcade, and travel with the President aboard Air Force One.[4] *Id.* That group is selected from the WHCA's varied membership and, to be selected, one must "regularly cover the White House, have the proper credentials, and demonstrate a commitment to the beat and to journalistic standards." *Id.* Seven of the thirteen spots are dedicated to three wire service reporters and to four photographers. The AP holds two seats—one for its wire services and one for a photographer.[5] The remaining six spots are filled in a rotating basis, with more than 40 news organizations

---

[4] Members of the press pool pay the full cost of travel on Air Force One, and are required to allocate significant resources to pool coverage. *See* WHCA, Guide to the White House Beat (April 2023), https://bit.ly/3CSOa7v.

[5] The AP has been a member of the White House press pool "since its creation over a century ago." Compl. (ECF No. 1) ¶ 4. The AP has maintained this position because it is able "to provide timely, accurate and nonpartisan reporting on the President and White House," serves "thousands of global news outlets that republish" its reports, and is relied on by "billions" worldwide. *Id.* ¶ 57.

participating.  *Id.*  A varied and reliable mix of news organizations is thus with the President to cover his policy statements, his diplomacy, his signing of legislation and executive orders, and—in serious cases—his health and safety.  The independent pool ensures that the public receives an outside perspective on the President's actions.

Although the pool consists of only a small number of journalists at any time, it serves an outsized importance for the American public.  The pool's reach is broad: its coverage and reports are relied upon by countless news organizations, as well as many "congressional aides, administration officials and political allies."  *Id.*  And the pool's role is significant: its coverage provides a first draft of history of events of domestic and global importance, such as the assassination of President Kennedy and attempted assassination of President Reagan, President Nixon's trip to China, and President Bush's immediate reactions to the September 11 terrorist attacks.

## II. The White House's Exclusion of any News Organization Has a Chilling Effect on the Press, Which Impairs The Press's Ability to Serve Its Democratic Role.

The White House's decision to ban any news organization from press pool activities—such as travel on Air Force One, diplomatic receptions, and press conferences in the Oval Office and at Mar-a-Lago—based on its editorial policies plainly violates the First Amendment.  This is the sort of "government tampering . . . with news and editorial content" that the Constitution forbids.  *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 259 (1974) (White, J., concurring).  But the First Amendment harms afflicted by the White House go beyond a particular news organization.

*First*, by excluding a news organization from participating in press pool events, the White House impairs the operation of the White House press pool.  This has a ripple effect, as many news organizations in and outside of Washington use pool reporting to prepare their own White House

coverage. If the pool reporting is degraded, then the news coverage that relies upon it will necessarily be degraded, too.

*Second*, by excluding a news organization from pool events, the White House also attacks the independent judgment of the White House press corps, as represented by the WHCA. The White House cannot dictate the membership of the White House press pool and larger press corps, while expressly stating the required speech for membership. The White House will, in effect, be usurping the traditional and independent function of the White House press corps in determining the composition of the press pool and administering the spaces in the White House that have traditionally been reserved for and managed by the press.

*Third*, by excluding a news organization from pool events based on its editorial standards, the White House articulates to the larger press corps that it demands orthodoxy of coverage of certain issues, as the White House determines on a rolling basis. This is hardly a "formal[] articulat[ion]" of a reasonable standard in support of a "compelling government interest." *Sherrill*, 569 F.2d at 130. This is instead a message to reporters that editorial disagreements could result in punishment if their reporting does not align with the White House's views.

The government should never interfere with the operation of an independent press, nor should it demand that reporters adopt the government's messaging, framing, and, indeed, ideological worldview. Such conduct is wholly at odds with the Constitution and cannot be permitted to persist.

## CONCLUSION

As the Supreme Court has recognized, "the suppression or abridgement of the publicity afforded by a free press cannot be regarded otherwise than with grave concern." *Grosjean*, 297 U.S. at 250. The effects to the press and to the public at large of excluding news organizations based on editorial decisions cannot be overstated. For all of these reasons, the WHCA therefore

7

respectfully urges this Court to grant the relief sought by The Associated Press, as "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Booth v. Bowser*, 597 F. Supp. 3d 1, 28 (D.D.C. 2022) (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020)).

Dated:  February 23, 2025

Respectfully submitted,

*/s/ Simon A. Latcovich*
Simon A. Latcovich (D.C. Bar No. 980319)
Alexandra M. Gutierrez (D.C. Bar No. 1619149)
Williams & Connolly LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Phone: (202) 434-5000
Facsimile: (202) 434-5029
slatcovich@wc.com

*Counsel for Amicus Curiae White House Correspondents' Association*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 23, 2025, I caused the foregoing Brief of Amicus Curiae the White House Correspondents' Association in Support of Plaintiff The Associated Press's Motions for Temporary Restraining Order and Preliminary Injunction to be filed with the Clerk for the United States District Court for the District of Columbia using the court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the court's CM/ECF system.

Dated: February 23, 2025

*/s/ Simon A. Latcovich*
Simon A. Latcovich
*Counsel for Amicus Curiae White House Correspondents' Association*