**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE ASSOCIATED PRESS, | |
| Plaintiff, | |
| v. | Case No. 25-cv-532-TNM |
| TAYLOR BUDOWICH, in his official capacity as White House Deputy Chief of Staff; KAROLINE LEAVITT, in her official capacity as White House Press Secretary; and SUSAN WILES, in her official capacity as White House Chief of Staff, | |
| Defendants. | |

*"The AP and the White House Correspondents Association wanted to f--k around.  Now it's finding out time."  -  unnamed White House advisor, speaking to Axios, Feb. 25, 2025*

## AMENDED COMPLAINT

Plaintiff The Associated Press ("the AP") files this Amended Complaint against Defendants Taylor Budowich, Karoline Leavitt and Susan Wiles, each in their official capacities, and states as follows:

### INTRODUCTION

1.      The White House has ordered The Associated Press to use certain words in its coverage or else face retaliation with an indefinite denial of access.  The press and all people in the United States have the right to choose their own words and not suffer retaliation at the hands of their government.  The Constitution does not allow the government to control speech.  Allowing government control to stand is a threat to every American's freedom.

2.      Rather than heed this Court's warning that precedent "is uniformly unhelpful" to the government "when the White House has banned reporters in the past," its observation that

the decision to deny the AP access "seems pretty clearly viewpoint discrimination," and its advice that "[i]t might be a good idea for the White House" to reconsider whether "what they're doing is really appropriate in light of the case law," the White House has instead retaliated against the AP further by abandoning the time-tested press pool system for ensuring that the public stays informed about the President of the United States and again barring the AP from the very same spaces – both small and large – that are at issue in this lawsuit.

3.      Notably, this matter is not only about the press pool, as the AP's journalists are also banned from larger events – including press conferences with the President and other world leaders – that are held in some of the White House's biggest spaces or even outside of the White House and that are open to all White House-credentialed journalists so long as they sign up in advance.  The AP's journalists, despite signing up in advance, are turned away.  The net result is that the AP's press credentials now provide its journalists less access to the White House than the same press credentials provide to all other members of the White House press corps.

4.      The AP therefore brings this action to vindicate its freedom of editorial independence guaranteed by the United States Constitution and to prevent the Executive Branch from coercing journalists to report the news using only government-approved language.

5.      The AP is one of the world's oldest and most trusted news organizations.  Since its inception in 1846, the AP, an independent, not-for-profit organization, has been known for its accurate, factual, and nonpartisan reporting, including on the President of the United States and the White House.  The AP's journalism reaches four billion people per day via news outlets around the world – whatever their political orientation – that rely on the AP to gather information and generate reporting that those news outlets republish for the benefit of their audiences.  The AP has received 59 Pulitzer Prizes for its courageous coverage of key moments of world history.

6.     The AP also has participated in the White House press pool since its creation over a century ago, making it possible for the AP to deliver to the public timely and thorough reporting on the President almost everywhere he goes, which is information critical to the public, as well as to the local and state news organizations that rely on the AP's coverage to inform their readers about the news of the day.

7.     In addition to covering press pool events in the Oval Office, Air Force One, and other smaller spaces that can accommodate only a limited number of journalists, AP reporters and photographers also regularly cover events open to greater numbers of journalists or to all journalists with White House press credentials.  These events take place both inside the White House, including in the East Room and other large spaces, and outside the White House, such as at the National Building Museum and at airports where Air Force One is arriving or departing.

8.     On February 11, 2025, without prior notice, White House officials informed the AP that it would be barred from entering certain areas in the White House as a member of the press pool unless the AP began referring to the Gulf of Mexico as the Gulf of America, following President Trump's renaming of a portion of that body of water in Executive Order 14172.

9.     When the AP refused to be coerced into adopting the language dictated by the President, within hours the White House retaliated by banning AP journalists from events open to the press pool.

10.     The White House's actions were taken in response to an editorial decision by the AP to refer to the Gulf of Mexico "by its original name *while acknowledging the new name Trump has chosen*."[1]  The AP explained in its AP Stylebook, which embodies the AP's editorial

---

[1] Amanda Barrett, *AP Style Guidance on Gulf of Mexico, Mount McKinley*, AP (Jan. 23, 2025), https://www.ap.org/the-definitive-source/announcements/ap-style-guidance-on-gulf-of-mexico-mount-mckinley (emphasis added).

standards, that, "[a]s a global news agency that disseminates news around the world, the AP must ensure that place names and geography are easily recognizable to all audiences."

11.     On February 14, the White House made its ban of the AP indefinite, announcing on X (formerly Twitter) that, because the AP had not yielded to its demand to use the name Gulf of America, AP journalists were now indefinitely banned from "access to limited spaces, like the Oval Office and Air Force One."  To date, the AP's reporters and photographers remain banned from participating in the press pool in the Oval Office, on Air Force One, and in other locations where space necessarily limits the number of journalists who could cover the event.

12.     The AP's reporter and photographers also remain barred from larger events that are open to all White House-credentialed journalists.  The White House has gone so far as to ban an AP photographer from covering the arrival of Air Force One at Palm Beach International Airport, even though the event was open to other credentialed media, and despite there being no space constraints whatsoever on the airport tarmac.

13.     In an email to the AP on February 18, 2025, White House Chief of Staff Susan Wiles explained "why we arrived in this point."  Wiles wrote that the White House was targeting the AP because its Stylebook "is used by many as a standard for writing and editing," and that it "advises journalists, scholars and classrooms around our country."  Wiles finished her email by noting, "we remain hopeful that the name of the [Gulf] will be appropriately reflected in the Stylebook where American audiences are concerned," clearly communicating that to resolve the issue and restore its access, the AP must change its guidance as to American audiences.

14.      President Trump doubled down on the administration's targeting of the AP, saying, "[w]e're going to keep them out until such time that they agree that it's the Gulf of

America" and that the AP "has been very, very wrong on the election, on Trump and the treatment of Trump."[2]

15.    After the AP filed this lawsuit on February 21, 2025, White House officials continued to confirm, over and over again, that the ban on the AP's access is based on the content and viewpoint of the AP's reporting.  On February 24, 2025, while interim U.S. Attorney for the District of Columbia Ed Martin was seated at counsel's table during the hearing on the AP's motion for a temporary restraining order, the U.S. Attorney's Office for the District of Columbia posted the following statement online attributed to him: "As President Trumps' [sic] lawyers, we are proud to fight to protect his leadership as our President and we are vigilant in standing against entities like the AP that refuse to put America first."[3]

16.    On February 25, 2025, Defendants escalated their retaliation against the AP. Leavitt announced at a press briefing that, going forward, White House officials would determine which news organizations participated in the press pool.  This marked the end of the White House's decades-long deference to the White House Correspondents' Association (WHCA) to organize the pool.  Leavitt announced that the new pool would consist of "legacy media" and "new media," with scant additional details.

17.    Leavitt made clear that the administration would, in her words, "double down" on excluding the AP.  Defendants' access ban on the AP has indeed remained in effect.

_____

[2] *See, e.g.*, David Bauder, *Trump Says AP Will Continue to Be Curtailed at White House Until It Changes Style to Gulf of America*, AP (Feb. 18, 2025), https://apnews.com/article/trump-ap-white-house-press-corps-pool-91535a6384d681fee1cd7e384ea6c627; *Trump Restricts AP Access Over Gulf of Mexico Issue*, Reuters (Feb. 18, 2025), https://www.reuters.com/world/us/trump-restricts-ap-access-over-gulf-mexico-issue-2025-02-19/.

[3] @USAO_DC, X (Feb. 24, 2025), https://x.com/USAO_DC/status/1894119675786621225.
The U.S. Attorney's Office posted that quote at 3:18 p.m. ET; the hearing began at 3:04 p.m. ET.

18.     The White House has continued to ban AP's journalists from covering the President at pool-only events in the Oval Office and other limited spaces.

19.     The White House also continues to ban AP journalists from larger spaces, such as the East Room and the tarmac at Palm Beach International Airport, during events that were open to all credentialed White House reporters and not just pool reporters.

20.     This Court should order that the White House immediately cease its retaliatory actions against the AP, which are based solely on the content of the AP's speech, and rescind its denial of the AP's access to the Oval Office, Air Force One, and other limited spaces when those spaces are made open to members of the White House press pool, as well as its denial of the AP's access to larger spaces open to all journalists with White House press credentials.

21.     The White House ban of the AP violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution.  As the D.C. Circuit has made clear, journalists' "first amendment interest" in access to the White House, at events both large and small, "undoubtedly qualifies as liberty which may not be denied without due process of law under the fifth amendment." *Sherrill v. Knight*, 569 F.2d 124, 130-31 (D.C. Cir. 1977).  The AP's liberty interest in access is rooted in the First Amendment's free speech and press guarantees and its related protections for newsgathering.  Defendants gave the AP no prior or written notice of, and no formal opportunity to challenge, their arbitrary determination that the AP would indefinitely lose access to the Oval Office, Air Force One, and other limited areas as a member of the press pool.  Nor did Defendants provide prior or written notice of, or formal opportunity to challenge, the denial of access to larger spaces open to all reporters with White House press credentials

22.     The ban also violates the First Amendment to the U.S. Constitution.  The D.C. Circuit has made clear that denying journalists access to White House press events "based upon

the content of the journalist's speech" is "prohibited under the first amendment." *Sherrill*, 569 F.2d at 129. Having opened the White House and certain areas to the press, the First Amendment "requires that this *access not be denied* arbitrarily or for less than compelling reasons." *Ateba v. Jean-Pierre*, 706 F. Supp. 3d 63, 75-76 (D.D.C. 2023) (quoting *Sherrill*, 569 F.2d at 129) (emphasis in original), *appeal argued*, No. 24-5004 (D.C. Cir. Oct. 15, 2024). Defendants have not provided, nor could they, any compelling reason for their arbitrary denial of the AP's access. Rather, Defendants' actions are impermissibly based on their dislike of the content of the AP's expression and what they perceive as the AP's viewpoint reflected in the content of its expression. The White House ban of the AP also constitutes impermissible retaliation, as it was instituted to punish the AP for its constitutionally protected speech, and for filing this case, in ways that would chill the speech of a reasonable person of ordinary firmness.

23.    After making several unsuccessful efforts to persuade Defendants that their conduct is contrary to well-established law, the AP brought this action to vindicate its constitutional rights, restore its access to presidential events, and ensure that the press remains free to report on the administration without fear of selective, arbitrary denials of access – denials that continue as to the newly constituted press pool and that have expanded to even more large spaces as well. The White House responded by "doubling down" on its denial of access and by discarding the White House press pool system that has worked for decades to keep the public informed about the President. The AP now files this Amended Complaint.

## PARTIES

24.    Plaintiff the AP is a not-for-profit news cooperative organized under the laws of the State of New York. The AP is one of the world's most trusted news sources, reaching four billion people per day, including with its coverage of the White House.

25.    Defendant Taylor Budowich is the White House Deputy Chief of Staff.  He is sued in his official capacity.

26.    Defendant Karoline Leavitt is the White House Press Secretary.  She is sued in her official capacity.

27.    Defendant Susan Wiles is the White House Chief of Staff.  She is sued in her official capacity.

## JURISDICTION AND VENUE

28.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

29.    Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).  A substantial part of the events giving rise to this action occurred in this district, and Defendants are officers of the United States sued in their official capacities.

## FACTUAL BACKGROUND

### The White House Press Pool

30.    Until this lawsuit began, the White House press pool consisted entirely of journalists who regularly report to the public about the President, the White House, and other Executive Branch activity in Washington, DC and globally.  For decades, the press pool has accompanied the President almost everywhere he goes, ensuring that the public is informed of his activity and that the President and his administration are held accountable to the public.

31.    Because there often is not enough space in the Oval Office or on Air Force One to accommodate every journalist who covers the President, the press pool has served as the eyes and ears of the full press corps, of news outlets outside of Washington, DC, and of the public.  In these places, the press pool acts as a witness to history, contemporaneously documenting and promptly reporting on the President's activities.

32.     Prior to February 25, 2025, in all of its permutations, the press pool had consisted of, at minimum, three wire reporters (one each from the AP, Reuters, and Bloomberg), four photographers (one each from the AP, Reuters, AFP, and The New York Times), three network television journalists, a radio correspondent, and at least one print reporter.  Membership in the pool was determined at the sole discretion of the White House Correspondents' Association (WHCA) and the press corps itself.  *See, e.g.*, https://whca.press/covering-the-white-house/resources/guide-to-the-white-house-beat.

33.     On information and belief, until February 25, 2025, the White House had never interfered with the WHCA's and White House press corps' determination of the news organizations that make up the White House press pool.

34.     In circumstances when logistics have dictated that the full press pool could not accompany the President, such as during President Biden's secret trip to Kyiv in 2023 or President Trump's secret trip from Palm Beach to Joint Base Andrews to begin a secret trip to Afghanistan in 2019, the WHCA—not the White House—determined the membership of an even more narrowly limited temporary pool.

35.     Conversely, when logistics have permitted more journalists to accompany the President, the WHCA determined the membership of an expanded pool, and the White House would admit additional journalists as space allowed.

36.     For certain large events in some of the White House's biggest spaces, such as press conferences with the President and other world leaders held in the East Room, any reporter with a White House press credential – regardless of whether that journalist is in the press pool – may attend and report on the event so long as they sign up in advance.

37.    The AP had been a member of the White House press pool since the pool's inception well over a century ago, and as a result, had been able to report to the public first-hand on some of history's most defining events.  In fact, an AP reporter became the first recorded presidential "pooler" in 1881, providing updates to fellow reporters from his post outside the White House sick room of President James A. Garfield after he was shot.  AP pool journalists were also in the motorcade in Dallas when President John F. Kennedy was assassinated, providing the nation with contemporaneous, fact-based reporting as the story developed, and as conspiracy theories spread.  And, AP journalists were in the pool with President George W. Bush when he learned of the September 11 terrorist attacks during an event in Florida, and they accompanied him on Air Force One to secure locations in Louisiana and Nebraska and back to Washington.

38.    The wire services have the broadest reach – particularly among outlets that cannot afford the considerable expense of providing their own coverage of the White House – and the WHCA therefore determined that they should always be present in the pool so that the widest possible audience can be informed of the President's activities.  The wire services have thus delivered nearly instantaneous content from the White House to thousands of news outlets in the U.S. and abroad, and through them to billions of readers around the globe.

39.    As a participant in the White House press pool, the AP has long provided at least two White House-credentialed journalists—one text reporter and one photographer—to the Oval Office and other areas of the White House when events open to the press are held in those areas.

40.    The AP has also long sent one text reporter and one photographer to travel with the President in the 13-seat press pool on Air Force One.  The AP and all other members of the pool have paid for such transportation and other costs, often at considerable expense.

41.     When AP text journalists covered presidential events, they were able to send reports out instantaneously to the AP's global readership.  That instantaneous publication also allowed the information to be distributed to thousands of news outlets all around the world.

42.     Moreover, a journalist covering an event in person is able to observe and report important information that they cannot gather from secondhand reporting, or even from watching a live video feed of the event.  For example, when President George W. Bush met the new Russian President Vladimir Putin in 2001, AP journalist Ron Fournier asked President Bush whether Putin was "a man that Americans can trust," and President Bush responded, "I looked the man in the eye.  I found him to be very straightforward and trustworthy… I was able to get a sense of his soul."  Because Fournier was present at the event, he could see National Security Adviser Condoleezza Rice gasp at the President's answer.[4]

43.     When the AP's text journalists were part of the press pool, there were no customs, expectations, or requirements that they share the information they gathered with other press pool members.  To the contrary, the wire services vigorously competed with each other to provide the fastest and most accurate news reporting at the very moment that the event was happening.  The AP's text journalists have lost the ability to provide such instantaneous reporting, and the AP and its news outlet customers have been harmed, when AP journalists have not been permitted to cover presidential events firsthand.

44.     When the AP's photographers covered presidential events, they were able to send photographs out to AP photo editors, and from there out to the AP's global readership, within a minute of the photographer taking them.  When they did so as part of the press pool, there were

---

[4] *See* Ron Fournier, *Bush, Putin vow new bonds, hint at compromise in first talks*, AP (June 17, 2001) (reporting that President Bush's answer "caught [his] advisers by surprise").

no customs, expectations, or requirements that the AP's photographers share the photos they took with the other press pool members. To the contrary, the photo poolers vigorously competed with one another to provide news organizations and others around the world with the fastest and best photographs of the event as it was taking place. The AP's photographers have lost the ability to provide such near-instantaneous photography, and the AP and its news outlet customers have been harmed, when AP photographers have not been permitted to cover presidential events and observe history on behalf of the public firsthand.

45.    AP journalists have also attended many events open not just to the pool, but to any journalist with a White House press credential, held in large spaces such as the East Room.

46.    Full access to places and events to which other members of the press pool and broader press corps are admitted is essential to the AP's ability to provide the public with fast, accurate, and comprehensive coverage of the President and his administration. When the AP is denied access, the thousands of global news outlets that republish the AP's news reports, and the billions of people that rely on its reporting, also are denied access.

**The White House Attempts to Control the AP's Speech**

47.    Upon information and belief, prior to the events giving rise to this lawsuit, the White House had never before attempted to bar an entire news organization from membership in the press pool and from accessing those spaces open to other members of the pool.

48.    During the prior Trump administration, the White House had targeted the press by revoking the "hard pass" press credentials of two White House correspondents, CNN's Jim Acosta and Playboy's Brian Karem, but had not barred all journalists at those organizations from accessing events open to the White House press corps. Other courts in this District held that those access denials were unlawful.

49.     On the morning of February 11, 2025, White House Press Secretary Karoline Leavitt summoned AP Chief White House Correspondent Zeke Miller to her office.  She told him that, at President Trump's direction, the AP would no longer be permitted in the Oval Office as part of the press pool until and unless the AP revised its Stylebook to refer to the body of water known for hundreds of years as the Gulf of Mexico as the Gulf of America.  Leavitt provided no reason for the decision other than to compel the AP to change the language of its reporting, nor did she object to any particular conduct by Miller or any other AP journalist.

50.     Leavitt's proclamation followed an Executive Order President Trump had issued on January 20, 2025, renaming a portion of the Gulf of Mexico as the Gulf of America.  Exec. Order No. 14172.  By its own terms, the Executive Order applies only to those portions of the Gulf within the United States.  The body of water also borders Mexico and Cuba.  It has been known as the Gulf of Mexico for over 400 years and remains known internationally as the Gulf of Mexico.

51.     On January 23, the AP announced that the organization would refer to the Gulf of Mexico "by its original name *while acknowledging the new name Trump has chosen*."[5]  The AP explained that, "[a]s a global news agency that disseminates news around the world, the AP must ensure that place names and geography are easily recognizable to all audiences."  The AP added that it "regularly reviews its style guidance regarding name changes, in part to ensure its guidance reflects common usage," and would do so here.  It also noted that the AP would "make updates as needed."

52.     In the same guidance, the AP noted that President Trump's January 20, 2025 Executive Order had also renamed North America's tallest mountain to Mount McKinley from

---

[5] Barrett, *AP Style Guidance*, *supra* (emphasis added).

Denali, undoing a 2015 name change issued by the Secretary of the Interior during President Obama's administration.  *See* Dep't of the Interior Order No. 3337 (Aug. 28, 2015).  The AP announced that it would follow this name change because the mountain is entirely within the United States and therefore under the federal government's renaming authority.

53.    The AP, however, abided by its carefully considered standards decision when Leavitt made her February 11, 2025 demand that, with respect to the Gulf, it must begin using only the Gulf of America name.

54.    Later on the afternoon of February 11, however, White House staff barred the AP's text journalist from attending a presidential executive order signing and press conference with Elon Musk in the Oval Office, which was open to the press pool.  The AP's photographer was allowed to attend.  This was Musk's first time answering questions with President Trump at the White House.  As a result, the AP's reporting on this highly newsworthy event was delayed and the AP was unable to ask questions that may have generated additional news.

55.    AP Executive Editor Julie Pace published a statement that same day objecting to the White House's actions.  Pace wrote that "[l]imiting our access to the Oval Office based on the content of AP's speech not only severely impedes the public's access to independent news, it plainly violates the First Amendment."[6]

56.    That night, another AP reporter was barred from an event in the Diplomatic Reception Room that was open to the press pool, as the President welcomed home an American, Marc Fogel, freed in a prisoner exchange with Russia.  The AP's photographer was not barred. As a result of the AP's reporter's exclusion, he was at the distinct disadvantage of relying on the

---

[6] Lauren Easton, *AP Statement on Oval Office Access*, AP (Feb. 11, 2025), https://www.ap.org/the-definitive-source/announcements/ap-statement-on-oval-office-access.

video feed to pull quotes.  This caused delays in the AP's reporting in an industry where seconds matter, and left the reporter without important in-the-room context.

57.    On February 12, 2025, Pace sent a letter to White House Chief of Staff Susan Wiles objecting to these denials of access, which "were plainly intended to punish the AP for the content of its speech" in violation of the AP's constitutional rights.  The AP "strongly urge[d] the administration to end this practice" and offered to meet to discuss the matter in person.[7]

58.    Also on February 12, Leavitt defended the White House's actions during a press briefing and stated that the AP was telling "lies" by using the Gulf of Mexico name.

59.    That afternoon, the AP was barred from an Oval Office press conference during the swearing-in of Director of National Intelligence Tulsi Gabbard.  The President's statements during the event generated important, breaking news, but the AP could not fully report on the event until it was over.

60.    On February 13, 2025, the AP's text journalist was barred (though its photographer was not) from a White House East Room press conference held by President Trump and Indian Prime Minister Narendra Modi, which was open to members of the press pool and to all other journalists with White House press credentials.  AP reporter Miller had submitted an RSVP for the event but was barred from attending.  At least one journalist from another news organization who did not RSVP was provided access.  The East Room is one of the largest event spaces at the White House, and can accommodate dozens of journalists, as it did for this event:

---

[7] @katie_robertson, X (Feb. 12, 2025),
https://x.com/katie_robertson/status/1889739177169670148.

**Figure 1: East Room Press Conference, Feb. 13, 2025 (AP Photo)**



61.     Also on February 13, the White House barred the AP altogether from three other Oval Office events open to the press pool: a session in which the President signed executive orders, the swearing-in ceremony for Robert F. Kennedy Jr. as Secretary of Health and Human Services, and a bilateral meeting with Prime Minister Modi.

62.     That same day, Pace issued a statement again objecting to the AP's "deeply troubling" exclusion and "urg[ing] the Trump administration in the strongest terms to stop this practice." Pace wrote that "[t]his is now the third day AP reporters have been barred from covering the president—first as a member of the pool, and now from a formal press conference—an incredible disservice to the billions of people who rely on The Associated Press for nonpartisan news."[8] Also on February 13, 2025, Pace sent an email to Wiles objecting again to the White House's actions against the AP.

---

[8] *White House Blocks AP Reporter from Trump-Modi News Conference Because of Gulf of Mexico Fight*, AP (Feb. 13, 2025), https://apnews.com/article/ap-white-house-gulf-name-dispute-media-864f2fbb5cfaeede009d7cea5788515b.

63.     On February 14, 2025, White House Deputy Chief of Staff Taylor Budowich publicly announced that, because the AP would not use the Gulf of America name, AP journalists were now indefinitely barred from "access to limited spaces, like the Oval Office and Air Force One."  Budowich stated that AP "journalists and photographers will retain their credentials to the White House complex."  Budowich's statement further claimed that the AP had a "commitment to misinformation" and published "irresponsible and dishonest reporting."[9]  That same day, Pace sent another email to Wiles again objecting to the White House's actions.

64.     The access denials continued that day, as the AP was barred from an Oval Office executive order signing and an Air Force One flight to Palm Beach, Florida.

65.     An unnamed White House source told journalists that the White House decided to expand its ban to include AP photographers as well as AP text journalists for the express purpose of "depriving the organization of the revenue it earns from selling pictures on its news wire."[10]

66.     On February 15, 2025, White House Deputy Chief of Staff Stephen Miller suggested further punishing the AP by revoking its White House access entirely.[11]  While this has not yet occurred, his statement further evidences the White House's clear intent to target the AP for the content of its speech.  The following day, February 16, Pace sent another email to Wiles objecting to the continued denial of access for the AP.

67.     From February 15 to 19, the AP was barred from coverage of the President while he was in West Palm Beach, Florida, including at a February 18 press conference open to other media organizations in addition to the pool, during which the President signed executive orders.

---

[9] @Taylor47, X (Feb. 14, 2025), https://x.com/Taylor47/status/1890453490398326919.

[10] See Erin Doherty et al., *Judge upholds Trump's right to block AP for now*, Axios (Feb. 24, 2025), https://www.axios.com/2025/02/24/trump-ap-access-lawsuit-white-house-filing.

[11] @StephenM, X (Feb. 15, 2025), https://x.com/StephenM/status/1890948850505945264.

68.    On the morning of February 18, five days after receiving the AP's letter protesting the White House's actions, Wiles responded.  *See* Decl. of Julie Pace Ex. B, ECF No. 11-3. Wiles wrote that "[t]here is no event that the Associated Press is being barred from covering," a statement that is plainly false given the AP's exclusion from President Trump's press conference with Prime Minister Modi and its exclusion from even more events in subsequent days.  Wiles also wrote that the White House's "view as to why we arrived in this point" is that "the influence" the AP's "Stylebook has acquired has been misused, and at times weaponized, to push a divisive and partisan agenda."  Wiles further stated that, as to the Gulf of Mexico specifically, White House officials "of course[] recognize that this renaming may not formally apply yet internationally," but Wiles nevertheless insisted that "given the AP's role, it should also appropriately make the distinction as an American guideline."

69.    Later that same day, President Trump confirmed that his administration would continue denying the AP access based on its journalism, remarking of the AP, "[w]e're going to keep them out until such time that they agree that it's the Gulf of America."  The President then lambasted the AP, stating that the AP "has been very, very wrong on the election, on Trump and the treatment of Trump" and that "they're doing us no favors and I'm not doing them any favors."  President Trump made these statements at a Mar-a-Lago press conference from which AP reporters were barred, even though the AP had requested access from Leavitt and other White House officials and from security staff on site at Mar-a-Lago.

70.    On February 19, 2025, in a final effort to reach a resolution of this matter short of litigation, Pace traveled to Miami, Florida, on one day's notice to meet with Wiles.  The meeting did not result in the White House ceasing its restrictions on the AP's access.  Instead, Wiles continued to insist that the AP must revise its Stylebook to adopt Gulf of America without

qualification.  Wiles informed Pace that she would discuss the matter with President Trump that evening and follow up with her, but to date, the AP has not heard further from Wiles.

71.    On February 20, 2025, an AP reporter and two AP photographers were barred from a Black History Month reception held in the East Room – a large event open to the press pool and all other White House credentialed journalists.  That evening, an AP reporter and photographer were barred from joining the remainder of the press pool in the President's motorcade to cover his attendance at a dinner hosted by the Republican Governors Association.  An AP Radio reporter, selected by his colleagues as the designated pooler for that format in the pool for events that day, was also barred from providing coverage of the day's events.

72.    Speaking at the Republican Governors Association dinner, held at the National Building Museum, President Trump emphasized that the White House is "holding [the AP] out of any news conferences" because of how the AP refers to the Gulf of Mexico, and he even predicted this very case, remarking that the possibility of the AP prevailing in such a lawsuit "doesn't matter" because the effort to coerce the AP into using the government's preferred words "is something we feel strongly about."[12]

### The AP Files this Lawsuit to Vindicate its Constitutional Rights

73.    On February 21, 2025, to protect its rights and stop the ongoing denials of access, the AP exercised its First Amendment right to petition the court and filed this lawsuit.

74.    The access denials continued, however, as did the White House's statements making clear that the denials are aimed at punishing the AP for the content and perceived viewpoint of its speech.

---

[12] *President Trump Remarks at Republican Governors Association*, C-SPAN (Feb. 20, 2025), https://www.c-span.org/program/white-house-event/president-trump-remarks-at-republican-governors-association/656015, at 46:16-46:43.

75.    For example, the White House responded to this lawsuit by issuing a statement from Communications Director Steven Cheung, which described this case as "frivolous and demented," insisted that the AP is "clearly suffering from a severe, debilitating case of Trump Derangement Syndrome that has rotted their peanut-sized brains," and vowed that "[w]e will defeat them in court just like we crushed their leftist reporters at the ballot box."[13]

76.    On February 22, 2025, the AP was excluded from covering the President's visit to the Conservative Political Action Conference, held at a large hotel and convention center in National Harbor, Maryland, where he met with Polish president Andrzej Duda.  That night, the AP was barred from covering the National Governors Association Evening Dinner and Reception in the East Room, where the President delivered remarks and took questions from the pool.  Due to its exclusion from the event, the AP was unable to confirm whether Democratic governors had attended, even by asking other journalists after the event was over.

77.    On February 24, 2025, AP journalists were excluded from a press conference with French President Emmanuel Macron held in the East Room, one of the largest rooms in the White House, as well as from a bilateral meeting between the two leaders in the Oval Office.

78.    The East Room press conference was open to all journalists with White House press credentials who signed up in advance.  The AP signed up in advance but never received a confirmation, and its White House reporter and photographer were blocked from entering.

79.    In a perfect illustration of how arbitrarily the White House has acted in excluding the AP, a Paris-based AP reporter flown overseas at the AP's expense *was* permitted to enter the East Room – *but only as part of President Macron's press pool*.  The White House thus forced

---

[13] Jeremy Barr, *Associated Press Sues White House Officials over Press Access Ban*, Wash. Post (Feb. 21, 2025), https://www.washingtonpost.com/style/media/2025/02/21/associated-press-lawsuit-white-house-ban.

the AP to incur significant costs, which the AP would not have borne but for this denial of access, to cover first hand President Macron's visit to the U.S. for the AP's global readership.

80.     Also on February 24, 2025, this Court held a hearing on the AP's motion for temporary restraining order, during which it stated that the ban on the AP "seems pretty clearly viewpoint discrimination." *See* Feb. 24, 2025 Hr'g Tr. at 40:1-2.  At the conclusion of the hearing, the Court declined to enter a TRO against Defendants, but the Court cautioned defense counsel that precedent "is uniformly unhelpful to . . . the White House when the White House has banned reporters in the past," and the Court observed that "[i]t might be a good idea for the White House" to reconsider whether "what they're doing is really appropriate in light of the case law." *See id.* at 60:21-61:6.

**The White House Seizes Control of the Press Pool and Continues to Exclude the AP**

81.     The White House refused to heed this Court's warning.  Instead, in an effort to evade the "uniformly unhelpful" precedent, and as a direct result of this lawsuit, on February 25, 2025 – the afternoon after the TRO hearing – Leavitt announced at a White House press briefing that White House officials would now hand-pick the outlets allowed to cover the President.  The White House thus ended the decades-long deference to the WHCA to select members of the press pool.  Leavitt announced that the pool would consist of "legacy media" and "new media," but she did not describe its membership or how the pool would work.  Leavitt had not notified or sought comment from WHCA or existing pool members before making her announcement.

82.     Regardless of these changes to the pool, however, Leavitt made clear that the White House would "double down" on excluding news organizations at will.  As an unnamed

White House advisor told journalists that day, "The AP and the White House Correspondents Association wanted to f--k around.  Now it's finding out time."[14]

83.    Wire services AP, Reuters, and Bloomberg issued a statement in response, writing that "[i]t is essential in a democracy for the public to have access to news about their government from an independent, free press," which limiting pool members' access endangers.[15]

84.    Following Leavitt's announcement, the number of pool spots allocated to wire service reporters shrank from three (AP, Reuters, and Bloomberg) to one or two (a rotation of Reuters and/or Bloomberg, with the AP still banned), and the AP has remained barred from participating in the four photographer spots as well.  For certain events, the White House has even permitted additional wire service reporters – but still not the AP's reporters – from covering the President.

85.    All other non-rotating, organizational members of the original press pool have, like the AP, continued to use the Gulf of Mexico name, while noting President Trump's Executive Order.  The White House has not barred any other news organization from participating in the press pool, either under the WHCA's oversight or its own, as a result of continuing to use Gulf of Mexico, underscoring the administration's particular animus toward and retaliation against the AP.[16]

---

[14] Marc Caputo et al., *White House strikes back at AP, takes over press pool coverage from reporter group*, Axios (Feb. 25, 2025), https://www.axios.com/2025/02/25/white-house-trump-press-pool.

[15] Lauren Easton, *Statement from AP, Bloomberg News, Reuters on White House Press Pool Access*, AP (Feb. 25, 2025), https://www.ap.org/the-definitive-source/announcements/statement-from-ap-bloomberg-news-reuters-on-white-house-press-pool-access.

[16] *But see* Kevin Robillard, *White House Kicks Out HuffPost Reporter From Press Pool*, HuffPost (Feb. 25, 2025), https://www.huffpost.com/entry/white-house-kicks-out-huffpost-reporter-from-press-pool_n_67be9224e4b0d509934aa224 (noting that the White House reassigned a print pool seat from HuffPost to Axios without explanation).

86.     Since February 14, 2025, the AP's White House journalists have remained barred from the Oval Office, Air Force One, and other locations otherwise open to the White House press pool, as well as from events open to all White House credentialed journalists.

87.     On February 27, 2025, for example, the AP's White House journalists were barred from a press pool event in the Oval Office with the President and UK Prime Minister Starmer.  However, and once more underlining the arbitrariness of the White House's actions, a London-based AP reporter flown overseas at the AP's expense *was* permitted to enter the Oval Office – *but only as part of Prime Minister Starmer's press pool*.

88.     That same day, the AP's White House journalists were barred from a press conference with the President and Prime Minister Starmer in the East Room that was open to all credentialed White House journalists who signed up in advance, which the AP journalists did.

89.     The AP's London-based reporter was permitted to enter the East Room and cover the event.  The White House thus forced the AP to incur significant costs, which the AP would not have borne but for this denial of access, to thoroughly cover Prime Minister Starmer's visit to the U.S. for the AP's global readership.

**Figure 2: Dozens of Journalists Gather for East Room Press Conference (AP Photo)**



90.    The next day, February 28, the AP's White House journalists were barred from a press pool event in the Oval Office with the President and Ukrainian President Volodymyr Zelenskyy.  Yet again, a Ukraine-based AP reporter flown overseas at the AP's expense *was* permitted to enter the Oval Office – *but only as part of President Zelenskyy's press pool*.

91.    On the afternoon of February 28, Pace sent another email to Wiles objecting to the continued exclusion of the AP from both the pool and events open to the larger press corps. As of this filing, Wiles has not responded to that email.

92.    On the evening of February 28, the White House even barred an AP photographer from covering the President's arrival on Air Force One at Palm Beach International Airport, despite opening the event to other credentialed media, and despite there being no space constraints on the airport tarmac.

93.    The White House has not provided the AP with any formal notice of the reasons for, formal opportunity to be heard regarding, or meaningful opportunity to challenge the White House's decision to bar the AP from the press pool, Oval Office, Air Force One, and other

limited areas open to pool members, or its decision to bar the AP from access to larger events open to credentialed journalists. The Constitution guarantees the AP these procedural protections given the AP's liberty interest in access to these spaces and events.

94.    The White House has based its indefinite denial of the AP's access, including after taking control of the press pool, on the content and perceived viewpoint of the AP's reporting and editorial decisions and on the AP's filing of this lawsuit, which constitutes impermissible retaliation against the AP based on its constitutionally protected activity in ways that would chill the speech of similarly situated reasonable individuals.

95.    The AP is harmed every day that it is denied firsthand access to pool events and to larger events open to all White House credentialed journalists. The AP's journalists cannot observe and report on the President's demeanor, appearance, tone, or expressions, or on the presentation of others in the room with him. Nor can the AP take its own photographs, which would satisfy its standards, provide the volume and variety of images that AP customers expect, and best advance the AP's own reporting. The denial of access also hinders the AP's ability to produce reporting and publish photographs quickly – an essential attribute of a wire service – causing delays that harm the AP and, as a result, the thousands of news outlets and billions of readers that rely on the AP's journalism. The AP has also been forced to incur the substantial costs of flying foreign-based AP journalists to the U.S. to cover foreign leaders' visits to the White House, as those foreign-based AP journalists are arbitrarily permitted to cover presidential events even though the AP's White House journalists remain banned from those same spaces.

## CLAIMS FOR RELIEF

### Count I
### Declaratory and Injunctive Relief
### <u>Violation of the Fifth Amendment: Exclusion from the Press Pool</u>

96.    The AP realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

97.    Defendants' decision to indefinitely ban the AP from "access to limited spaces, like the Oval Office and Air Force One" open to members of the White House press pool, violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution.  Because the White House has made those spaces available to other members of the pool, it cannot constitutionally deny the AP access without due process of law, and cannot deny access arbitrarily or for anything other than legitimate, compelling reasons unrelated to the perceived viewpoint of the press pool member.

98.    The AP's access as a member of the press pool to the Oval Office, Air Force One, and the other limited spaces – which the White House has now revoked indefinitely – is protected by the First and Fifth Amendments.  Being a member of the press pool and reporting from these spaces has, for over a century, allowed the AP to effectively and timely report on the President and White House, information which is critical to an informed public.  The indefinite denial of the AP's access hinders its ability to provide timely, accurate and nonpartisan reporting on the President and White House to the thousands of global news outlets that republish the AP's news reports and to billions of readers globally.

99.    The White House's decision to deny the AP's access was arbitrary.  The AP received no prior notice of the White House's decision.  Leavitt announced the decision verbally, after it had been made, to AP Chief White House Correspondent Miller.  The AP received no written notice of the White House's decision before it took effect.

26

100.    Defendants also did not provide to the AP any opportunity to challenge their decision before it took effect, nor have Defendants provided to the AP any formal opportunity to challenge it since that time.  Instead, the administration repeatedly has made clear that it intends to continue barring the AP's access indefinitely unless the AP uses the President's preferred language.

101.    As a result of Defendants' actions, the AP has suffered and continues to suffer irreparable harm.

**Count II**
**Declaratory and Injunctive Relief**
**Violation of the First Amendment: Exclusion from the Press Pool**

102.    The AP realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

103.    The White House has ordered the AP to use certain words in its coverage or else be barred from accessing events open to the White House press pool, as direct retaliation for the AP's speech and for the AP's decision to file this lawsuit.  Defendants' decision to bar the AP from reporting in the White House press pool and to deny the AP's access to the Oval Office, Air Force One, and other limited areas, violates the First Amendment to the U.S. Constitution.  The AP's access to and reporting on the White House as a member of the press pool, the AP's own editorial decisions about naming conventions, and the AP's petitioning of the court, are all protected under the First Amendment.

104.    Defendants have deprived the AP of its right as a member of the White House press pool to access limited areas in the White House that have been opened to the press pool as representatives of the press and public.  This attempt to control speech has the impact of depriving the thousands of global news outlets that republish the AP's news reports, and its

billions of readers around the world, from the AP's factual, timely and nonpartisan reporting on the White House.

105.    Defendants have admitted that they acted against the AP based on their dislike of the AP's use of the Gulf of Mexico name and its other editorial choices.  The law does not allow the government to control speech based on its likes and dislikes.  Such dislike is not a compelling reason to justify the infringement of the AP's First Amendment rights, and it is not narrowly tailored to achieve any compelling government interest.

106.    Defendants' actions against the AP expressly were taken because of the language the AP uses in its reporting and Stylebook, constituting viewpoint-based discrimination that is impermissible even in the most restrictive nonpublic forums.

107.    Defendants' actions against the AP were in retaliation for the AP's exercise of its First Amendment-protected rights of expression and its right to petition the court by filing this very lawsuit.  The access denial was intended to have, and has had, a chilling effect on the exercise of the AP's First Amendment rights.  Defendants' acts would chill, and have chilled, the speech of similarly situated reasonable people of ordinary firmness.

108.    Defendants' access denial is also intended to compel the speech of the AP, specifically to make the Gulf of America the primary term used in its reporting and Stylebook.

109.    As a result of Defendants' actions, the AP has suffered and continues to suffer irreparable harm.

**Count III**
**Declaratory and Injunctive Relief**
**Violation of the Fifth Amendment: Exclusion from Credentialed Press Events**

110.    The AP realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

111.    Defendants' decision to indefinitely ban the AP from events open to all credentialed White House journalists violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution.  Because the White House has made those spaces available to all credentialed White House journalists, requiring only that they sign up in advance, it cannot constitutionally deny the AP's access without due process of law, and cannot deny access so arbitrarily or for anything other than legitimate, compelling reasons unrelated to the AP's perceived viewpoint.

112.    The AP's access to events that are open to all White House credentialed journalists—which the White House has now denied indefinitely—is protected by the First and Fifth Amendments.  Access to these events, which include press conferences with the President and other world leaders, allows the AP to effectively and timely report on the President and White House, information which is critical to an informed public.  The indefinite denial of the AP's access hinders its ability to provide timely, accurate and nonpartisan reporting on the President and White House to the thousands of global news outlets that republish the AP's news reports and to billions of readers globally.

113.    The White House's decision to deny the AP's access was arbitrary.  The AP received no prior notice of the White House's decision.  Leavitt announced the decision verbally, after it had been made, to AP Chief White House Correspondent Miller.  The AP received no written notice of the White House's decision.

114.    Defendants also did not provide to the AP any opportunity to challenge their decision before it took effect, nor have Defendants provided to the AP any formal opportunity to challenge it since that time.  Instead, the White House repeatedly has made clear that it intends to

continue barring the AP's access indefinitely unless the AP uses the President's preferred language.

115.    As a result of Defendants' actions, the AP has suffered and continues to suffer irreparable harm.

**Count IV**
**Declaratory and Injunctive Relief**
**<u>Violation of the First Amendment: Exclusion from Credentialed Press Events</u>**

116.    The AP realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

117.    The White House has ordered the AP to use certain words in its coverage or else be barred from accessing major events open to all other credentialed White House journalists, as direct retaliation for the AP's speech.  Defendants' decision to bar the AP from these large events violates the First Amendment to the U.S. Constitution.  The AP's access to and reporting on the White House, and the AP's own editorial decisions about naming conventions, are protected under the First Amendment.

118.    Defendants have deprived the AP's journalists of their right as credentialed White House reporters and photographers to access events in the White House that have been opened to all other credentialed White House journalists.  This attempt to control speech has the impact of depriving the thousands of global news outlets that republish the AP's news reports, and its billions of readers around the world, from the AP's factual, timely and nonpartisan reporting on the White House.

119.    Defendants have admitted that they acted against the AP based on their dislike of the AP's use of the Gulf of Mexico name and its other editorial choices.  The law does not allow the government to control speech based on its likes and dislikes.  Such dislike is not a compelling

30

reason to justify the infringement of the AP's First Amendment rights, and it is not narrowly tailored to achieve any compelling government interest.

120.    Defendants' actions against the AP expressly were taken because of the language the AP uses in its reporting and Stylebook, constituting viewpoint-based discrimination that is impermissible even in the most restrictive nonpublic forums.

121.    Defendants' actions against the AP were in retaliation for the AP's exercise of its First Amendment-protected rights of expression and its right to petition the court by filing this very lawsuit.  The access denial was intended to have, and has had, a chilling effect on the exercise of the AP's First Amendment rights.  Defendants' acts would chill, and have chilled, the speech of similarly situated reasonable people of ordinary firmness.

122.    Defendants' access denial is also intended to compel the speech of the AP, specifically to make the Gulf of America the primary term used in its reporting and Stylebook.

123.    As a result of Defendants' actions, the AP has suffered and continues to suffer irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, the AP respectfully requests that this Court:

a.    Order the Defendants to immediately rescind their denial of the AP's access to the Oval Office, Air Force One, and other limited spaces when such spaces are made open to other White House press pool members;

b.    Declare that the Defendants' conduct in denying the AP access to spaces open to other members of the White House press pool violated the First and Fifth Amendments;

c.    Order the Defendants to immediately rescind their denial of the AP's access to events that are open to all credentialed White House journalists;

      d.      Declare that the Defendants' conduct in denying the AP access to events that are open to all credentialed White House journalists violated the First and Fifth Amendments;

      e.      Award to the AP its costs and reasonable attorneys' fees incurred in this action; and

      f.      Grant such further relief as the Court may deem just and proper.

Dated:  March 3, 2025        Respectfully submitted,

BALLARD SPAHR LLP

*/s/ Jay Ward Brown*
Jay Ward Brown (#437686)
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Sasha Dudding (#1735532)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
brownjay@ballardspahr.com
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Counsel for Plaintiff The Associated Press*