UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ASSOCIATED PRESS,<br><br>                Plaintiff,<br><br>    v.<br><br>TAYLOR BUDOWICH,<br>White House Deputy Chief of Staff, et al.,<br><br>                Defendants. | Civil Action No. 25-0532 (TNM) |

## MOTION TO STAY PENDING APPEAL

Defendants—Taylor Budowich, in his official capacity as White House Deputy Chief of Staff; Karoline Leavitt, in her official capacity as White House Press Secretary; and Susan Wiles, in her official capacity as White House Chief of Staff—respectfully move to stay the Court's preliminary injunction set forth in its Memorandum Order of April 8, 2025 (ECF No. 46, "Preliminary Injunction") until the outcome of Defendants' appeal of the same concludes. Government counsel discussed this motion with counsel for Plaintiff the Associated Press and learned that the Associated Press opposes this motion. The grounds for this motion are as follows.

## INTRODUCTION

The Preliminary Injunction constitutes an unprecedented intrusion into Executive authority. For the first time in history, and inconsistent with D.C. Circuit precedent, *see Sherrill v. Knight*, 569 F.2d 124, 129 (D.C. Cir. 1977), a court issued an order to control access to the President's most intimate spaces: his personal workspace (the Oval Office), his means of transportation (Air Force One), and his personal home (the Mar-a-Lago Club). It did so largely by conducting a forum analysis, which is used by courts to evaluate restrictions on speech, and by equating spaces for large press gatherings with more limited, personal spaces such as the Oval

Office.  But there are no allegations that Defendants have restricted the Associated Press's speech—e.g., adopting content-based restrictions on what may be uttered in the Oval Office, controlling any reporter's ability to send text messages or photos in areas of the White House to which they are admitted, or a prior restraint on the Associated Press's publications.  Instead, this case is about special access to the president's personal and private spaces, which the D.C. Circuit has refused to consider under a forum analysis.  *See Price v. Garland*, 45 F.4th 1059, 1068 (D.C. Cir. 2022) (finding forum analysis inappropriate to filmmaker's recording endeavors; "[b]ecause a filmmaker does not seek to communicate with others at the location in which he or she films . . . it would be a category error to apply the speech-protective rules of a public forum to regulation of an activity that involves merely a noncommunicative step in the production of speech"); *Sherrill*, 569 F.2d at 129 ("Nor is the discretion of the President to grant interviews or briefings with selected journalists challenged. It would certainly be unreasonable to suggest that because the President allows interviews with some bona fide journalists, he must give this opportunity to all.").

Additionally, the Court should exercise caution and at least stay its ruling regarding the Associated Press's access to the Oval Office, Air Force One, and the Mar-a-Lago Club. Underlying the Court's ruling are profound separation of powers issues.  The Executive maintains that the President has the right to dictate who is permitted in his personal spaces for any reason, no less than any American has the right to dictate who enters their personal office space, vehicle, or home.  It would be unreasonable for the President to lose the right to control who is in his private spaces (including his private home, the Mar-a-Lago Club) simply because he becomes President. Moreover, until the questions presented in this case are resolved on appeal, the Court risks unending litigation every time a reporter from the Associated Press is rejected for entry into the press pool, Mar-a-Lago Club, Air Force One, or the Oval Office on grounds that the Associated

Press may find improper (or falsely speculate are pretextual) but have nothing to do with the content of its speech. The Court should permit appellate review of this issue before imposing its order.

Ultimately, because the Court erred in issuing the preliminary injunction and to ensure compliance with Federal Rule of Appellate Procedure 8(a) ("A party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal."), Defendants respectfully move the Court to stay its preliminary injunction pending an appeal.

## DISCUSSION

"[T]he factors regulating the issuance of a stay are . . . (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Here, these factors weigh in favor of a stay.

*First*, Defendants have a strong likelihood to succeed on the merits. As discussed in the Government's prior briefing, this case is not about restrictions on speech, but on access to the President's intimate spaces. Gov't Prelim. Inj. Br. (ECF No. 33) at 23–24. Indeed, in its opinion the Court hinged its ultimate conclusion regarding press pool access, and in distinguishing *Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 417–18 (4th Cir. 2006), on the notion that press pool access is not about speech at all, but about access to observe. Mem. Order (ECF No. 46) at 28–29 ("this is a dispute over forum access for firsthand journalistic observation, not a right to speak with the President").

Although the Court recognized this case is about constraints on access, not restrictions on speech, the Court adopted a forum analysis to review the constraints in this case. But the D.C. Circuit has disavowed employing a forum analysis to assess mere access constraints. *Price*,

45 F.4th at 1068.[1]  Indeed, it is well-established that there exists no First Amendment right for press to access any location that is not generally open to the public.  *Zemel v. Rusk*, 381 U.S. 1, 17 (1965) ("the prohibition of unauthorized entry into the White House diminishes the citizen's opportunities to gather information he might find relevant to his opinion of the way the country is being run, [ ] that does not make entry into the White House a First Amendment right.  The right to speak and publish does not carry with it the unrestrained right to gather information"); *Houchins v. KQED*, 438 U.S. 1, 15 (1978) (plurality opinion) ("There is no constitutional right to have access to particular government information, or to require openness from the bureaucracy." (quoting Hon. Potter Stewart, "Or of the Press," 26 Hastings L.J. 631, 636 (1975), available at: https://moglen. law.columbia.edu/CPC/PotterStewart_OrOfThePress.pdf ("The press is free to do battle against secrecy and deception in government.  But the press cannot expect from the Constitution any guarantee that it will succeed."))).  Nonetheless, the Court adopted a forum analysis in its opinion in ruling that the White House likely violated the First Amendment.  Mem. Order (ECF No. 46) at 29 ("forum analysis applies because the Government has chosen to open the Oval Office to some reporters for newsgathering").

Forum analysis is also clearly inapplicable to the President's personal spaces under *Sherrill*.  In *Sherrill*, the D.C. Circuit noted that simply because the President opens his private space to "selected journalists" for an interview or briefing, does not mean he surrenders discretion to determine who has access to him in those settings.  *Sherrill*, 569 F.2d at 129.  Further, never in

---

[1]      Yesterday, in *Ateba v. Leavitt*, No. 24-5004, 2025 WL 1036451, at *4 (D.C. Cir. Apr. 8, 2025), the D.C. Circuit employed a forum analysis in resolving a journalist's claim regarding "hard pass" access to the White House in favor of the United States.  It did so, however, based on the assumption that the journalist had asserted a First Amendment injury and expressly did not consider the Government's argument that a forum analysis was inappropriate because the journalist's claims "implicate only a 'noncommunicative, preparatory step in the production of speech' and therefore enjoy no First Amendment protections."  *Id.* at *4 n.7.

history has a court ruled that the President cannot take a person's viewpoint into consideration when determining who has access to him in his private spaces. To the contrary, the D.C. Circuit has observed that presidents are permitted to take reporters' viewpoints into consideration in selecting journalists for private interviews and briefings. *Sherrill*, 569 F.2d at 129. Respectfully, the Court's use of a forum analysis and other legal considerations underlying the Court's opinion were in error.

*Second*, the parties' competing harms and balance of equities and public interest overwhelmingly favor a stay pending appeal. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that these factors merge in cases involving the government). As explained, the preliminary injunction—which requires the President to admit the Associated Press to his highly personal areas and other limited access events without regard to its speech—is unprecedented. Never has a court directed the Executive to provide such access to the President's intimate presidential spaces—all disputes before now concerned general press access to the White House's press facilities, which the Associated Press unquestionably continues to enjoy. Mem. Order (ECF No. 46) at 3. Requiring such access without regard to a journalist's viewpoint intrudes on the Executive's prerogative of who should be in the direct presence of the President. That sort of harm—to the Executive Branch, to the separation of powers, and to our democratic system—is irreparable.

Conversely, the Associated Press has not established that it will suffer irreparable harm if the Court's order is stayed pending appeal. Although the Court concluded that the Associated Press established sufficient harm for the entry of a preliminary injunction, the Associated Press continues to cover the White House and receive media from pool and other photojournalists and videographers. It has also enjoyed access in one form or another to every East Room and limited access, press credentialed events since late February 2025 spare one. Prem. Inj. Hr'g Tr. (ECF

No. 45) at 145 (Miller testifying; "Q: And so for each of the pre-credentialed media events, aside from maybe—we have a dispute over February 28th—at each of those, the AP has had a journalist, be it a text journalist, through a foreign correspondent, or a photojournalist at each of those events. Correct?  A. In one way, shape or form. Yes.").[2]  The Associated Press's financial harms are also no greater than any other media group that lacks a presence in the press pool.  Not all media groups can physically be a part of the pool, and the harms suffered by non-pool members are merely the costs of doing business in a competitive journalistic environment that often turns on being provided discretionary access to newsmakers, including based on the content of their coverage.

*    *    *

---

[2]    In light of this concession from the Associated Press's chief White House correspondent, the Court's factual conclusion to the contrary is plainly in error.  Mem. Order (ECF No. 46) at 11. Indeed, not only did the Associated Press concede it has been present in some form at every East Room and other pre-credentialed event since late-February 2025 (spare the February 28th tarmac landing), but the Associated Press knows of no other non-pool media group that has received as much access to the White House as the Associated Press since February 24, 2025.  Prem. Inj. Hr'g Tr. (ECF No. 45) at 138.

**CONCLUSION**

For these reasons, the Court should grant a stay of its preliminary injunction order pending resolution of Defendants' appeal, or alternatively, a stay of that portion of its preliminary injunction restricting Defendants' ability to consider viewpoint in providing press access to the President's intimate and private spaces, whether that be in the Oval Office, Air Force One, and the Mar-a-Lago Club.  If the Court denies this requested relief, the Government requests that the Court nonetheless extend its temporary stay through April 21, 2025, to permit the Government to seek, and for appellate courts to consider, a further stay of the Court's preliminary injunction.

Dated: April 9, 2025
      Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney


By:         */s/ Brian P. Hudak*
      BRIAN P. HUDAK
      Chief, Civil Division
      601 D Street, NW
      Washington, DC 20530
      (202) 252-2549

*Attorneys for the United States of America*