IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ASSOCIATED PRESS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>TAYLOR BUDOWICH, et al.,<br><br>　　　　Defendants. | Case No. 25-cv-532-TNM |

**PLAINTIFF THE ASSOCIATED PRESS'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO STAY PENDING APPEAL**

Earlier this week, this Court entered a preliminary injunction firmly and unequivocally requiring Defendants to "*immediately* rescind" their access ban on the Associated Press ("AP"). Prelim. Inj. Order at 41 (ECF 46) ("Injunction Order") (emphasis added). The Court correctly concluded, based on a largely uncontested record, that the AP is likely to establish that Defendants unconstitutionally discriminated against it on the basis of its viewpoint, and unconstitutionally retaliated against the AP for its exercise of First Amendment freedoms, by excluding AP journalists from events open to the White House press pool and White House press corps because of the AP's continued use of the name Gulf of Mexico. *Id.* at 29-30, 32, 36. The Court thus ordered Defendants to cease their unconstitutional behavior and "put the AP on an equal playing field as similarly situated outlets." *Id.* at 21, 40. And while the Court *sua sponte* ordered a brief stay until April 13, the Court explicitly explained the reason for that temporary measure: "to provide the Government time to seek an emergency stay *from a higher court* and to prepare to implement the Court's injunction." Stay Order (ECF 47) (emphasis added).

In plain violation of the Court's order directing them to seek relief "from a higher court," Defendants now ask *this* Court to permit them to continue what the Court already has determined

1

is an ongoing violation of the First Amendment. Defs.' Mot. to Stay (ECF 52) ("Stay Mot."). Defendants' motion fails to obey the Stay Order – this motion does not seek "an emergency stay from a higher court," nor has the White House communicated to the AP or this Court about how it has "prepared to implement the Court's injunction."[1] On this basis alone, the Court can and should deny the Stay Motion.

But even if the Court were to look past the White House's contravention of its order, the Stay Motion, which reads more like a motion to reconsider, utterly fails to satisfy the demanding standard for staying relief pending appeal. This Court should deny the Stay Motion and, absent an intervening ruling from the Court of Appeals, have the injunction become operative as the Court already has provided.

## ARGUMENT

A stay from the district court is not to be granted lightly, especially in cases of great public importance like this one. *See, e.g.*, *WP Co. v. SBA*, 2020 WL 6887623, at *5 (D.D.C. Nov. 24, 2020) (denying government's motion for stay pending appeal due to "the overriding public interest against a stay — along with the harm that it would generate"). Because "a stay pending appeal is always an extraordinary remedy," the party seeking a stay "carries a heavy burden to demonstrate that the stay is warranted." *McCammon v. United States*, 584 F. Supp. 2d 193, 197 (D.D.C. 2008) (internal marks and citation omitted). To carry that burden, the party seeking a stay must satisfy a four-factor test that in many ways mirrors the analysis the Court already has undertaken in rendering the Injunction Order, and that weighs "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the

---

[1] After filing this motion, Defendants also filed a stay motion in the Court of Appeals. *See* Emergency Mot. for a Stay Pending Appeal and an Immediate Administrative Stay, *AP v. Budowich*, No. 25-5109 (D.C. Cir. Apr. 10, 2025) (Doc. 2110443).

moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Loving v. IRS*, 920 F. Supp. 2d 108, 110 (D.D.C. 2013) (citations omitted) (denying stay).

Defendants do not make the necessary showing on *any* of these factors: Defendants are unlikely to prevail on appeal; Defendants will suffer *no* harm from the Order going into effect, while the AP will suffer *irreparable* harm absent a stay; and the public interest squarely opposes a stay. The Court should deny the Stay Motion accordingly.

I.      **DEFENDANTS ARE NOT LIKELY TO PREVAIL ON APPEAL.**

Defendants' claim that they are likely to prevail on appeal is at odds with controlling precedent, as well as the Court's actual order. Stay Mot. at 1. The force of this Court's logic, and the narrow and reasonable relief that the Court's Injunction Order actually provides the AP, demonstrate how unlikely Defendants are to succeed on appeal.

As the Court held, "under the First Amendment, if the Government opens its doors to some journalists—be it to the Oval Office, the East Room, or elsewhere—it cannot then shut those doors to other journalists because of their viewpoints. The Constitution requires no less." Injunction Order at 2. The Court applied a rule that has been well understood since the nation's "early centuries": that "the First Amendment . . . safeguard[s the public's] natural right to heap honest criticism upon the Government without fear of official reprisal." *Id.* at 16 (citing Jud Campbell, *Natural Rights and the First Amendment*, 127 Yale L.J. 246, 280 (2017)).

In applying this rule, the Court followed the well-established precedent that "[n]ot only newsmen and the publications for which they write, but also the public at large have an interest protected by the first amendment in assuring that restrictions on newsgathering be no more arduous than necessary, and that individual newsmen not be arbitrarily excluded from sources of

3

information." *Sherrill v. Knight*, 569 F.2d 124, 129-30 (D.C. Cir. 1977). Because here, the "Government has been brazen about . . . restricting the AP's access *precisely* because of the organization's viewpoint," the Court held that "the AP is likely to succeed on the merits of its First Amendment viewpoint-discrimination and retaliation claims for both its press pool and East Room allegations." Injunction Order at 19, 21 (Court's emphasis). For the same reasons, the AP is likely to prevail on appeal.

### A. Defendants Are Not Likely To Prevail On Appeal Against The AP's First Amendment Viewpoint-Discrimination Claims.

Defendants' exclusion of AP journalists is unconstitutional viewpoint-based discrimination and retaliation. *See, e.g.*, *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, --- F. Supp. 3d ----, 2025 WL 675060, at *1 (D. Md. Mar. 3, 2025) (denying stay pending appeal of preliminary injunction of executive order that "specifically target[s] viewpoints the government seems to disfavor"). "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). Defendants have not shown that they are likely to convince the Court of Appeals otherwise.

As this Court correctly noted, "In modern jurisprudence, forum analysis controls the extent to which the government may restrict access to public property for First Amendment activities." Injunction Order at 17 (citing *Price v. Garland*, 45 F.4th 1059, 1067 (D.C. Cir. 2022)). Just this week, the D.C. Circuit reinforced the precise manner in which this Court analyzed this case. The Court of Appeals held that, in a forum analysis, the court "first consider[s] the level of First Amendment scrutiny that should be applied," which "depends on the type of forum for speech that has been created by the government." *Ateba v. Leavitt*, --- F.4th ----, 2025 WL 1036451, at *4 (D.C. Cir. Apr. 8, 2025). Applying that analysis, and

4

determining that the categories of either nonpublic or limited public forum were appropriate, the Court adhered to precedent, holding that the White House's restrictions must be "*viewpoint neutral* and *reasonable*" in light of "[t]he purpose of the forum." *Id.* at *6 (emphasis added).

Based on uncontested facts, the Court then found that because "the Government has chosen to open the Oval Office" and "other press pool locations and events," as well as larger spaces such as "the East Room" to "some reporters for newsgathering," these are all "nonpublic for[a]," from which "[t]he Government . . . cannot exclude the AP from access based on its viewpoint." Injunction Order at 29-30. The Court further found – and the White House's brazenness compelled this conclusion – that the record makes clear "that the Government has discriminated against it based on its viewpoint, a claim the Government all but concedes." *Id.* at 29; *see also, e.g.*, Mar. 27, 2025 Hr'g Tr. at 190:14-24 (ECF 45). The Court noted three times in its Injunction Order that the Defendants' counsel unequivocally stated that the AP is being denied access "because they refuse to adhere to what the President believes is the law . . . that the body of water is called the Gulf of America." Injunction Order at 8, 21, 31. On the facts and the law, the Court was clearly correct in holding that Defendants have discriminated against the AP based on viewpoint, in violation of the First Amendment.

Defendants fail to establish that their appeal from this holding would have *any* likelihood of success. Because "[f]orum analysis offers a difficult path to victory for the Government" due to the plainly discriminatory nature of its access ban, "it comes as no surprise that the Government" again "disputes the threshold applicability of forum analysis." *Id.* at 23. Defendants now attempt to retread that same unsuccessful path, claiming that forum doctrine does not apply because "this case is about constraints on access, not restrictions on speech." Stay Mot. at 3. This argument fares no better the second time.

5

Defendants rely on *Price*, in which the D.C. Circuit counseled against "apply[ing] the speech-protective rules of [forum analysis] to regulation of" pre-speech activities – there, recording a documentary in a national park for dissemination at "some other time." 45 F.4th at 1068, 1070; *see* Stay Mot. at 3-4. Yet unlike in *Price*, "AP journalists are engaged in full-fledged expression when they report from the Oval Office" and other limited spaces. Injunction Order at 24. From the Oval Office and other spaces where the White House admits reporters, AP journalists "break the news," "use all five senses to craft a unique message for publication," and "ask questions" of the President and those around him—and the loss of these opportunities, as punishment for AP's expression, "has unquestionably harmed the AP's reporting." *Id.* at 34-36. Moreover, while the Stay Motion leans heavily on the *Price* precedent, as this Court noted, that case fully favors the AP under these facts: "*Price* counsels that even if any of the reporters' actions are noncommunicative, the proper inquiry is still a nonpublic forum analysis which *never* tolerates viewpoint discrimination." Injunction Order at 25 (citing *Price*, 45 F.4th at 1070) (emphasis added). Defendants do not address *any* of these facts or analyses in their Stay Motion.

Defendants also entirely misconstrue forum doctrine by arguing that it does not apply here because there is no freestanding right of access to the White House. Stay Mot. at 4 (citing *Zemel v. Rusk*, 381 U.S. 1, 17 (1965)). Setting aside that *nobody* has claimed such a right, *see* Injunction Order at 20, the essence of forum doctrine is that "[a]lthough the government is not required to open such spaces for any speech at all," once the government decides to open its property for use by certain speakers, it cannot restrict access unreasonably or based on viewpoint, *Ateba*, 2025 WL 1036451, at *5. That is how, even though the public has no general right of access to the White House, the White House still contains nonpublic forums. *Id.*

6

Defendants ignore this controlling precedent. Instead, they rely on the bald assertion that the Oval Office, Air Force One, and Mar-a-Lago are the President's "private spaces" and thus exempt from forum analysis even though the government has opened those spaces to journalists to observe and report on how the President conducts the public's business. *See* Stay Mot. at 2. Defendants cite no case law to support this novel proposition, nor do Defendants cite any record evidence (because there is none) to support the idea that the President actually views those spaces as purely private. A motion to stay a preliminary injunction is not a vehicle for shoehorning in new, unsupported theories and arguments.

Despite Defendants' rhetoric, the Oval Office and Air Force One are federal, taxpayer-funded property. The President uses them to conduct official business – just as he uses Mar-a-Lago as his "winter White House."[2] Critically to forum analysis, the government has opened all of these spaces for access by the press pool and other journalists.

**President Trump and Elon Musk Speak to Press Pool in Oval Office (AP, Feb. 11, 2025)[3]**



---

[2] *See, e.g.*, Marc Caputo, *Trump dubs Mar-a-Lago the new 'Winter White House'*, Politico (Jan. 18, 2017), https://www.politico.com/states/florida/story/2017/01/trump-dubs-mar-a-lago-the-new-winter-white-house-108841.

[3] *See, e.g.*, Chris Megerian & Michelle L. Price, *Musk appears at White House defending DOGE's work but acknowledging mistakes*, AP (Feb. 11, 2025), https://apnews.com/article/trump-downsizing-federal-workers-doge-00683abc4de44a151f26aaa6cb0d0f30.

The President also routinely speaks to the pool on Air Force One, which includes space expressly intended for "traveling press." *See About the White House: Air Force One*, White House, https://www.whitehouse.gov/about-the-white-house/air-force-one.

**President Trump Speaks to Press Pool on Air Force One (AP, Jan. 26, 2025)[4]**



The President also frequently hosts large events at Mar-a-Lago open to the press and others:

**President Trump Holds Super Tuesday Party at Mar-a-Lago (AP, Mar. 5, 2024)[5]**



---

[4] *See, e.g.*, Will Weissert, *Trump's Q&A on Air Force One goes from the plane's color scheme to the fate of TikTok and Canada*, AP (Jan. 26, 2025), https://apnews.com/article/trump-air-force-one-tiktok-canada-workers-06489fe4a05a352ce553e7da94a923a7.

[5] *See, e.g.*, *In case you missed it: Trump's estate was packed for a party*, AP (Mar. 5, 2024), https://apnews.com/live/super-tuesday-updates-results#0000018e-1293-d0c3-afee-ba9b00e00000.

At bottom, the law is clear that the First Amendment applies with equal force to all nonpublic fora, regardless of their location.  *See, e.g.*, *Knight First Amend. Inst. v. Trump*, 928 F.3d 226, 235 (2d Cir. 2019) (holding President Trump's personal Twitter account was subject to forum analysis), *vacated on other grounds sub nom. Biden v. Knight First Amend. Inst.*, 141 S. Ct. 1220 (2021).  Because the government opened the Oval Office, Air Force One, Mar-a-Lago and other spaces to the press pool and press corps, as this Court found, it cannot ban the AP based on its viewpoint.  Defendants are unlikely to succeed on their appeal from this claim.

### B. Defendants Are Not Likely To Prevail On Appeal As To The First Amendment Retaliation Claims.

Defendants are unlikely to succeed in establishing that the White House's ongoing retaliation does not violate the AP's First Amendment rights.  *See* Injunction Order at 32-36.  *In fact, Defendants wholly overlook this independent basis for injunctive relief.*  "As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech."  *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (cleaned up).  Even "[a]n ordinarily permissible exercise of discretion may become a constitutional deprivation if performed in retaliation for the exercise of a First Amendment right."  Injunction Order at 32 (quoting *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002)).  Unconstitutional retaliation occurs when a plaintiff shows:

> (1) he or she engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against him or her.

*Ateba v. Jean-Pierre*, 706 F. Supp. 3d 63, 86 n.10 (D.D.C. 2023) (cleaned up).  The AP satisfies each element of this test – indeed, "[t]he analysis is straightforward":

> The AP made an editorial decision to continue using "Gulf of Mexico" in its Stylebook. The Government responded publicly with displeasure and explicitly announced it was curtailing the AP's access to the Oval Office, press pool events, and East Room activities. If there is a benign explanation for the Government's decision, it has not been presented here.

Injunction Order at 33. This retaliation has "undoubtedly" had an "adverse" impact on the AP. *Id.* AP White House journalists are "getting 'absolutely [] slaughtered'" by Defendants' access denials. *Id.* (quoting Hr'g Tr. at 37:22). AP photographers are stuck with "qualitatively and quantitatively inferior" images taken by others, which they can only publish with a delay that leaves the AP "'dead in the water'" as compared to competitors. *Id.* at 33-34 (quoting Hr'g Tr. at 34:19). Likewise, the AP's text journalists are less able to receive and publish information in real time, and "the AP cannot reproduce" this reporting "by watching from afar." *Id.* at 34-35. The AP's "business model" is suffering, because its customers rely on, and pay for, "its ability to rapidly supply new photographs and breaking news," and may "flee to other news services absent" relief. *Id.* at 35, 38. One advertiser canceled a $150,000 contract. *Id.* (citing Decl. of Kristin Heitmann ¶ 9 (ECF 37-1)). "The AP has thus shown that the Government retaliated against it for an exercise of its First Amendment freedoms, and that its speech has been adversely affected as a result." *Id.* at 36. Defendants cannot show that they are likely to convince an appeals court otherwise, and in fact they have not even *attempted* to do so. *See* Stay Mot.

Because Defendants have not shown that they have any "likelihood" of prevailing on appeal, Defendants have failed to carry their burden on the first element of the stay test.

## II.   DEFENDANTS WOULD NOT BE HARMED ABSENT A STAY.

On the second stay factor, Defendants incorrectly assert that they will be "irreparably harmed" without a stay because the Injunction Order "intrudes on the Executive's prerogative of who should be in the direct presence of the President." Stay Mot. at 5. This argument fails

10

because the Injunction Order does no such thing: it expressly recites that the President may continue to give interviews to whoever he wants, call on whoever he wants, and say whatever he wants. Injunction Order at 1. He need not open any given event to the press at all, and he can even restrict access based on security concerns, space constraints, or any other viewpoint-neutral and reasonable basis. *See id.*; *Sherrill*, 569 F.2d at 129. All that the First Amendment requires is that when the government *does* open spaces to the press, the government cannot then selectively exclude journalists based on their viewpoint. *Id.* Following this core First Amendment rule will cause no harm. *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) (the White House has no interest in the "enforcement of an unconstitutional law").

Nor could Defendants show that letting back in the AP specifically will cause harm. "[T]he AP had two permanent spots—one print reporter and one photographer," in the White House press pool "for over a century." Injunction Order at 2. As a wire service, the AP has long had "the broadest reach," and can "distribute [its] text reporting and photography by 'wire' to subscribers across the country and the globe." *Id.* at 4. Maintaining the status quo and permitting the AP to attend events open to the press pool and press corps, as the AP has done for over a century to the benefit of billions of readers globally, would not harm Defendants in the slightest. They have no bona fide interest in continuing to "single[] out the AP because of its refusal to update the Gulf's name in its Stylebook" by "systematically and almost completely exclud[ing]" AP journalists from press events. *Id.* at 6. This factor, too, weighs strongly in favor of denying Defendants' motion for a stay pending appeal.

### III. A LONGER STAY WOULD SUBSTANTIALLY HARM THE AP AND THE PUBLIC.

The public interest and the prospect of even more irreparable harm to the AP also weigh decisively against the Stay Motion. It is axiomatic that "'[t]he loss of First Amendment

freedoms, for even minimal periods of time,' constitutes irreparable harm when the plaintiff demonstrates that its 'First Amendment interests are either threatened or in fact being impaired at the time relief is sought.'" Injunction Order at 37 (quoting *Nat'l Treasury Emps. Union v. United States*, 927 F.2d 1253, 1254 (D.C. Cir. 1991) (Thomas, J.) (cleaned up)); *see also Karem*, 960 F.3d at 667 ("[A] prospective violation of a constitutional right constitutes irreparable injury[.]").

Defendants brush off the harms they have caused to the AP and the public by claiming that the AP "continues to cover the White House." Stay Mot. at 5. This claim flies in the face of the extensive record evidence – much of which was developed during a six-hour evidentiary hearing at which the AP presented two live witnesses – of the AP's significant and ongoing harms. The only evidence that Defendants cite is AP Chief White House Correspondent Zeke Miller's testimony, which they misconstrue to advance the claim that the AP has had access to "every East Room" event since late February "save one." *Id*. at 5-6 (quoting Hr'g Tr. at 145:7-13). As the record reflects, the AP has been excluded from pool-only East Room events, the AP's White House *text* journalists also have been "systematically and almost completely excluded" from the East Room, and the AP's "photographers have suffered curtailed access." Injunction Order at 9; *see also* Hr'g Tr. at 117:23-118:2 (Mr. Miller testifying that "since February 11th, AP text reporters have been excluded from every single . . . White House event other than . . . fewer than a handful of West Palm Beach tarmac arrivals"), 33:20-21 (AP Chief Washington Photographer Evan Vucci testifying that "since we've been excluded, we're really, really struggling to – to keep up").

As the Court held, "[t]he AP provided abundant evidence that its First Amendment right to gather and quickly disseminate news about the President has been severely hampered by—and

12

continues to be hampered by—the ban on press pool admission and the highly circumscribed access to limited-access events." Injunction Order at 37.  This harm is irreparable because "there is no real replacement for the missed photos" and text reporting.  *Id.* at 34 (citing *United States v. Long*, 92 F.4th 481, 486 (3d Cir. 2024) ("[W]ritten descriptions . . . are imperfect substitutes because photos and videos convey a pictorial accuracy and detail that words cannot duplicate." (cleaned up)); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 597 n.22 (1980) ("[T]he 'cold' record is a very imperfect reproduction of events.")).  The AP also faces significant financial harms, none of which are recoverable due to the government's sovereign immunity. Injunction Order at 38 (citing *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021)).  "A delay in capturing photos and details of breaking news can be," and has been, "catastrophic."  *Id.* at 35.  Granting a further stay would only escalate that catastrophe.

Defendants also fail to consider that all of these harms to the AP are felt strongly by the public as well.  "[T]here is always a strong public interest in the exercise of free speech rights otherwise abridged by an unconstitutional regulation."  *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016).  The AP's ability to observe and report on presidential events informs the public about the activities of the President and other public officials, which is essential in a democracy.  *See* Am. Br. of Amici Curiae State Democracy Defenders Fund & Former Public Officials at 14-15 (ECF 49) (23 former officials describe the importance of a robust, independent press in a democracy).  Audiences across the country and the world rely on the AP to inform them of the White House's activity through its customer news organizations, and "local news outlets are particularly reliant on wire services for news from Washington, D.C."  Injunction Order at 4; *see* Br. of Amicus Curiae WHCA at 6-7 (ECF 20).  Further delaying injunctive relief would irreparably harm not only the AP, but also everyone that its

journalism reaches around the globe. And it would permit the White House to continue retaliation against AP that this Court, clearly and correctly, found violates the First Amendment.

On balance, none of the four factors supports a stay, and all weigh strongly against any additional delay in implementing the injunction. The Court should therefore deny Defendants' procedurally improper motion and maintain the April 13 effective date for the injunction.

## CONCLUSION

For the foregoing reasons, the AP respectfully requests that the Court deny Defendants' motion for stay.

Dated: April 10, 2025

Respectfully submitted,

BALLARD SPAHR LLP

*/s/ Jay Ward Brown*
Jay Ward Brown (#437686)
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Sasha Dudding (#1735532)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
brownjay@ballardspahr.com
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Counsel for Plaintiff The Associated Press*