IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ASSOCIATED PRESS,<br><br>        Plaintiff,<br><br>v.<br><br>TAYLOR BUDOWICH, et al.,<br><br>        Defendants. | Case No. 25-cv-532-TNM |

**PLAINTIFF THE ASSOCIATED PRESS'S COMBINED
MOTION TO ENFORCE PRELIMINARY INJUNCTION
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff The Associated Press ("the AP"), by its attorneys, hereby moves the Court to order the relief necessary to ensure Defendants' immediate compliance with the Court's April 8, 2025 Memorandum Order granting the AP's Amended Motion for Preliminary Injunction (the "Injunction Order") (ECF 46).

After continuing to exclude the AP from the press pool since the injunction took effect on Monday, April 14, the White House last night announced a new "White House Press Pool Policy." This new policy declares, in clear violation of the Court's Injunction Order, that "[t]he President retains absolute discretion over access to the Oval Office, Air Force One, and other comparably sensitive spaces." Moreover, as reflected in the daily pool guidance for today (April 16), even under this new policy, the White House has <u>again</u> excluded the AP from the pool. Specifically, the new policy abolishes the wire service seat that the White House itself established on February 25, replacing it with a second print reporter seat for which wire services are ostensibly eligible – but the AP was immediately skipped over for that second print seat. Moreover, AP photographers are <u>still</u> excluded from the four photo seats, which continue to be

assigned exclusively to AFP, Getty, The New York Times, and Reuters.  The AP therefore requests the Court's immediate assistance in enforcing its Injunction Order.

1. On April 8, 2025, this Court entered a preliminary injunction requiring Defendants to "immediately rescind the denial of the AP's access to the Oval Office, Air Force One, and other limited spaces based on the AP's viewpoint when such spaces are made open to other members of the White House press pool," and to "immediately rescind their viewpoint-based denial of the AP's access to events open to all credentialed White House journalists." Injunction Order at 41.

2. The Court correctly concluded, based on a largely uncontested record, that the AP is likely to establish that Defendants unconstitutionally discriminated against it on the basis of its viewpoint, and unconstitutionally retaliated against the AP for its exercise of First Amendment freedoms, by excluding AP journalists from events open to the White House press pool and White House press corps because of the AP's continued use of the name Gulf of Mexico.  *Id.* at 29-30, 32, 36.  The Court thus ordered Defendants to cease their unconstitutional behavior and "put the AP on an equal playing field as similarly situated outlets."  *Id.* at 21, 40.

3. Though the Court recognized that Defendants' actions were causing the AP irreparable harm, *see id.* at 37-38, the Court *sua sponte* ordered a brief stay through April 13, 2025, "to provide the Government time to seek an emergency stay from a higher court and to prepare to implement the Court's injunction," *see* Apr. 8, 2025 Order (ECF 47).

4. Defendants subsequently asked this Court to enter a longer stay, and the Court promptly and firmly rejected that motion, explaining that "the Government has not shown that it is likely to succeed on the merits," and that "the equitable considerations do not favor the Government; the AP will be irreparably harmed without the injunction and that harm would

2

revive upon staying it, while the Government's policy goals may never triumph over the Constitution." *See* Apr. 11, 2025 Mem. Order at 2 (ECF 55) (cleaned up).

5.  Defendants also sought a stay pending appeal and an administrative stay from the Court of Appeals, which the AP opposed, and the Court of Appeals responded by promptly setting a hearing on that stay motion and <u>not</u> further staying the Injunction Order. *See* Order, *AP v. Budowich*, No. 25-5109 (D.C. Cir. Apr. 13, 2025) (Doc. 2110733) (per curiam). As Defendants acknowledged in a subsequent letter to the Court of Appeals, the Injunction Order has therefore "now taken effect." *See* Apr. 14, 2025 Ltr. from Defendants' Counsel to Clerk of Court, *id.* (Doc. 2110741).

6.  Despite this acknowledgment, the Principal Deputy White House Press Secretary informed the AP on April 14, 2025, that AP journalists will continue to be excluded from press pool events because this case is "ongoing." *See* Declaration of Chris Megerian ¶¶ 2-5. An AP text journalist and an AP photographer were therefore not permitted to attend a press pool event in the Oval Office on April 14. *Id.*[1]

7.  When undersigned counsel contacted Defendants' counsel on April 14 to confer regarding this motion, pursuant to Local Civil Rule 7(m), Defendants' stated, at around 7:00 pm ET, that "the AP was not excluded today on the basis of the litigation" but rather "because it was not its turn under the policy allowing one wire service access each day." Counsel added, "[w]e

---

[1] At this time, the AP is not moving to enforce the injunction as to claims regarding access to the East Room and other pre-credentialed media events. Although an AP text journalist was excluded from an event on April 14 that was open to the White House press corps, an AP text journalist was allowed into an East Room event open to the press corps yesterday, April 15. AP photographers were allowed into both events. Should Defendants resume their discriminatory, retaliatory access denials of the AP from events open to the White House press corps, however, the AP will seek appropriate relief.

3

anticipate a new press policy will be announced in the next 24 hours that also conforms to Judge McFadden's order." A true and correct copy of the April 14 email is attached as Exhibit A.

8. On April 15, yesterday, the AP was again excluded from the press pool's wire and photography spots. Undersigned counsel therefore contacted Defendants' counsel that morning, objecting to the exclusion and explaining that, "today is the fifth business day since the District Court ordered the White House to 'immediately' include the AP in the pool. Under a non-discriminatory system, the AP should have been selected for either the wire or photo pool, or both, by today." Undersigned counsel requested the "White House's firm commitment by close of business today that the AP will be restored to the pool 'immediately' and regularly receive a rotating assignment to daily pool opportunities, as well as pre-credentialed events." A true and correct copy of the April 15 email is attached as Exhibit B.

9. Instead of providing any such commitment, the White House instead announced a new policy for the press pool. A true and correct copy is attached as Exhibit C.

10. The new policy abandons the longstanding role of wire services, which have been included in the pool since its inception to assure that White House reporting reaches the broadest possible audience in the United States and around the globe as quickly and reliably as possible. This change marks the latest reduction in wire service participation, which the White House continues to use as a pretext for targeting the AP: from three non-rotating wire spots (AP, Bloomberg, and Reuters) before the White House barred the AP on February 11, to two wire spots between February 11 and 25 (Bloomberg and Reuters), to one or two wire spots until April 16 (Bloomberg and/or Reuters), to zero dedicated wire spots now.

11. Now, the pool will instead have two print seats: "One print journalist to serve as 'print pooler'" and "[o]ne additional print journalist." *Id.* at 4. The policy provides that "[w]ire-

based outlets will be eligible for selection as part of the Pool's daily print-journalist rotation." *Id.* at 5. The rest of the pool now consists of four photo spots, one radio seat, one "new media/independent journalist" seat, one TV network, and one secondary TV network or streaming service. *Id.* at 4.

12. The policy claims that "[o]utlets will be eligible for participation in the Pool, irrespective of the substantive viewpoint expressed by an outlet," but – repeating the same gamesmanship over the phrase "eligibility" that this Court has seen before – the policy further asserts that "[a]lthough eligible outlets will generally rotate through these slots, the White House Press Secretary shall retain day-to-day discretion to determine composition of the pool." *Id*. at 4-5. Moreover, ignoring this Court's clear instructions, the policy declares that regardless of who may be eligible for the pool, the President "retains *absolute discretion* over access to the Oval Office, Air Force One, and other comparably sensitive spaces." *Id.* at 5 (emphasis added).

13. The White House's daily pool guidance for April 16 does not include the AP at all, in either the four photo spots or two print pool spots. Under any non-discriminatory policy, however, the AP would have been selected for participation in the pool at least once since the injunction took effect. A true and correct copy of the April 16 daily pool guidance is attached as Exhibit D.

14. The new policy did not include any list of participating outlets or schedule for their rotation into the pool, further underscoring the lack of *any* indication that the White House has in fact "immediately rescinded" its viewpoint-based exclusion of the AP's text journalists and photographers. *See* Ex. C.

15. "The power of a federal court to protect and enforce its judgments is unquestioned." *Marshall v. Loc. Union No. 639*, 593 F.2d 1297, 1302 (D.C. Cir. 1979). Courts

5

"have the power to enter such orders as may be necessary to enforce and effectuate their lawful orders and judgments, and to prevent them from being thwarted and interfered with by force, guile, or otherwise." *Sec. Indus. Ass'n v. Bd. of Governors of Fed. Rsrv. Sys.*, 628 F. Supp. 1438, 1441 (D.D.C. 1986) (cleaned up).  That remains the case even though Defendants have appealed from the Injunction Order, because "[a] district court retains jurisdiction to enforce the terms of a previously entered injunction." *Am. Min. Cong. v. Army Corps of Eng'rs*, 120 F. Supp. 2d 23, 27 (D.D.C. 2000) (collecting cases).

16. Given Defendants' refusal to obey this Court's Injunction Order on its own terms, the AP respectfully requests that this Court enter such further relief as the Court deems necessary to ensure that Defendants immediately comply with the Injunction Order.

17. Pursuant to Local Civil Rule 7(m), as reflected in Exhibits A to C, counsel for the AP conferred by email with counsel for Defendants in advance of filing this motion. Defendants' counsel contested the basis for this motion and the need for the relief sought.

Dated:  April 16, 2025

Respectfully submitted,

BALLARD SPAHR LLP

*/s/ Charles D. Tobin*
Charles D. Tobin (#455593)
Jay Ward Brown (#437686)
Maxwell S. Mishkin (#1031356)
Sasha Dudding (#1735532)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
brownjay@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Counsel for Plaintiff The Associated Press*