UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ASSOCIATED PRESS,

            Plaintiff,

    v.

TAYLOR BUDOWICH,
White House Deputy Chief of Staff, et al.,

            Defendants.

Civil Action No. 25-0532 (TNM)

## OPPOSITION TO MOTION TO ENFORCE

Defendants—Taylor Budowich, in his official capacity as White House Deputy Chief of Staff; Karoline Leavitt, in her official capacity as White House Press Secretary; and Susan Wiles, in her official capacity as White House Chief of Staff—respectfully oppose the plaintiff's motion to enforce the preliminary injunction. ECF No. 56. Defendants have fully complied with the Court's injunction. The Court ordered Defendants to rescind the denial of the Associated Press' access to certain areas based on the Associated Press' viewpoint. Since April 14, 2025, when the stay of the injunction expired, the Associated Press has not been excluded from the White House press pool based on its viewpoint. *See* Third Declaration of Taylor Budowich ("Third Budowich Decl.") ¶ 3. Naturally, this does not mean that the Associated Press was immediately placed in every daily press pool and granted access to every media event at the White House starting on April 14, 2025. The injunction the Court entered does not go that far, nor does it require displacement of other media outlets selected in an ordinary rotation or based on other discretionary factors for limited spaces.

The new White House Press Pool Policy confirms that Defendants have fully complied with the Court's injunction. The new policy states that news outlets "will be eligible for

participation in the Pool, irrespective of the substantive viewpoint expressed by an outlet." ECF No. 56, Ex. C. Indeed, the Associate Press's objection to the policy is at best premature. The policy issued only two days ago. And nothing in the Court's order requires the Associated Press to be placed first in any rotation adopted by the White House.

It is telling that absent a stay, the Associated Press "is expected to receive a spot in the Press Pool for print journalists by April 20, 2025[,]" and the White House has confirmed "that photojournalists from the Associated Press are eligible for rotation into the pool and will not be denied access based on viewpoint." *Id.* ¶ 5. Indeed, a photojournalist from the Associated Press participated in the Press Pool on April 17, 2025. *Id.*

After the injunction was in effect for only two days, the Associated Press rushed to this Court for unspecified "immediate assistance in enforcing" the injunction. *See* Pl.'s Mot. to Enforce, ECF No. 56 at 2. This once again highlights the interbranch friction that the Court's injunction causes—the Associated Press now calls upon the Court to potentially take discovery from senior White House officials, to superintend the implementation of new White House policies, and to micromanage day-to-day decisions concerning matters as sensitive as access to the Oval Office. That is not the proper role of the judiciary. Because the motion offers little, if anything, more than speculation of noncompliance—which is refuted by the declaration filed with this response; the new White House Press Pool Policy; and the facts on the ground—the Court should deny relief.

## **Standard of Review**

A court asked to enforce a prior order should only grant the motion when a "prevailing plaintiff demonstrates that a defendant has not complied with a [prior order] entered against it." *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004). At all times, the Court should

demand an appropriate showing before granting any relief and wield its powers with care and due recognition for enforcing its command without any gloss. *See Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014) (cleaned up); *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984). That is especially so when matters of interbranch comity are at issue. The central question is whether the plaintiff has "received all relief required" by the Court's prior order. *Heartland Hosp.*, 328 F. Supp. 2d at 11.

## Factual Background

On Monday, April 14, counsel for the Associate Press sent Defendants' counsel a short e-mail misreading the Court's injunction and demanding that the Associate Press be selected for immediate press pool service. ECF No. 56, Ex. A. That same day, officials for the Associated Press demanded to be let into the Oval Office for an event with the President of the United States—despite not being part of the daily press pool—even though this Court's order plainly requires no such thing. This Court's injunction merely requires Defendants to rescind any viewpoint-based denial of the Associate Press' access and permit access on equal-footing; it does not require Defendants to admit the Associated Press any time the organization wishes.

On Tuesday, April 15, the White House Communications Office issued a new White House Press Pool Policy, which fully complies with this Court's injunction. ECF No. 56, Ex. C. The policy provides that "[e]ligible outlets will be chosen for the White House Press Pool on a rotating basis." *Id.* The policy states that the President, who is not named as a party in this litigation, "retains absolute discretion over access to the Oval Office, Air Force One, and other comparably sensitive spaces," and makes clear that "[o]utlets will be eligible for participation in the Pool, *irrespective of the substantive viewpoint expressed by an outlet*." *Id.* (emphasis added).

## **Argument**

As the declaration filed with this response and the new White House Press Pool policy make clear, Defendants have fully complied with the Court's injunction. The Associated Press nonetheless moved to enforce the injunction based on a mere two days of not being selected for the daily press pool. But the Court's order did not require the Defendants to give the Associated Press special treatment or special access. And the Associated Press's non-selection for Pool duties for two days is not indicative of noncompliance with the injunction. The Associated Press's objection to the new policy—which issued only about fourteen hours before the Associate Press filed the motion to enforce (most of which were overnight)—is both premature and unfounded. Further demonstrating that Plaintiff's motion to enforce is unsound, the Associated Press was admitted as part of the daily press pool on April 17, 2025. Third Budowich Decl. ¶ 5.

As explained below, the Court's preliminary injunction did not require White House officials to grant the Associated Press access to the Oval Office or to any other space or event on April 14, 2025, or any other specific day. The injunction does not require pre-clearance by this Court for changes to the press policy. Further, nothing in the April 15, 2025, White House Press Pool Policy treats the Associated Press less favorably than comparable wire services or denies the Associated Press access to the White House Press Pool based on its viewpoint.

Because the injunction does not curtail the exercise of discretion by the White House to change the press pool policy if the change does not use viewpoint to deny the Associated Press access, the new policy fully complies with the injunction and explicitly provides that no entity will be excluded from the press pool based on viewpoint. *See* Pl.'s Mot. to Enforce, ECF No. 56, Ex. C. Rather than accepting Defendants' good faith representations and efforts at compliance, the Associated Press cries foul without reason.

I. **The Defendants Have Complied With the Injunction Since It Went Into Effect on April 14, 2025, and the Associated Press' Non-Selection Is Not the Same as Exclusion Based on Viewpoint.**

The motion to enforce in this case is founded upon the Associated Press' misapprehension of the injunction as commanding more than it does. Defendants have fully complied with the injunction since it went into effect on April 14, 2025. *See* Third Budowich Decl. ¶¶ 3–5. The White House has not denied access to the Associated Press based on viewpoint. *Id*. The absence of the Associated Press from the daily press pool on April 14 was due to it not being its turn in the rotation on the first day the injunction was in effect rather than any exclusion based on viewpoint. *See id*. ¶ 4. Counsel for the Associate Press reached out to government counsel that day to inquire about the basis for the Associated Press not being in the daily press pool. Counsel for the Associated Press was given reasonable assurance that evening that Reuters had been given the wire service spot on April 14, 2025 based on a rotation, and that non-selection of the Associated Press was unrelated to the litigation challenging viewpoint-based exclusions. *See* Pl.'s Mot. to Enforce, ECF No. 56 Ex. A (April 14, 2025 email); *see also* Third Budowich Decl. ¶ 4. Notwithstanding that assurance, the Associated Press filed a motion after one additional day of not being selected into the daily press pool and the issuance of a new press policy that the Associated Press dislikes. Two days of non-selection into the daily press pool since the injunction became effective hardly amounts to "continuing [] exclu[sion of] the AP from the press pool," as the Associated Press contends (Pl.'s Mot. to Enforce at 1), and the new policy conforms with the injunction because it does not deny the Associated Press or any other White House Press Pool member access to the daily pool based on viewpoint.

The Associated Press' arguments are premised on an overly expansive reading of the Court's preliminary injunction. The Court crafted the injunction narrowly and specified that the

injunction "restore[s] eligibility for [Plaintiff's] admission to the press pool and limited-access press events, untainted by an impermissible viewpoint-based exclusion . . . [which is] all the Court orders [by way of injunctive relief]." *See* Mem. Order, ECF No. 46 at 40.  The Associated Press' motion does not claim that it was "treated worse than its peer wire services," *id*., on April 14 or 15, 2025 (other than having to wait its turn in a rotation), or that the new press policy denies access based on viewpoint.

*First*, the Associated Press' motion is based on in an incorrect reading of the injunction. The Associated Press treats the injunction as requiring that it be given access to spaces or events any time White House Press Pool journalists are present.  But the injunction requires no such thing. Instead, the injunction— until stayed or modified—requires the White House to rescind denials, based on the Associated Press' viewpoint, of access to the Oval Office, press area on Air Force One, and other spaces and events "when such spaces are made open to other members of the White House press pool."  *See* Apr. 8, 2025 Mem. Order at 41.  Denials based on a daily press pool rotation, where opportunities are given to other media in the regular course, are plainly allowed under the Court's injunction.  Given the rotational processes used for the daily press pool and the day-to-day discretion vested in the White House Press Secretary, no reasonable inference of noncompliance could be drawn from the Associated Press not being selected during a period of just a few days.

The injunction requires the Associated Press to be restored to press pool eligibility, not that it be immediately selected for service or selected more frequently than its peers.  In the context of injunctions, the exact commands of the Court set the metes and bounds, and in this case the Court made clear that "the AP is not necessarily entitled to the 'first in line every time' permanent press pool access it enjoyed under the WHCA."  *Id*. at 40.  Because the motion to enforce improperly

conflates non-selection with exclusion based on viewpoint, it fails to show that Defendants are not in compliance with the injunction.

*Second*, the injunction does not prohibit changes to the press policy as long as such changes do not impose viewpoint-based access restrictions on the Associated Press. The April 15, 2025 policy does the opposite by stating explicitly that participating news outlets are eligible for selection into the daily press pool "irrespective of the substantive viewpoint expressed by an outlet." *See* April 15, 2025 White House Press Pool Policy, Pl.'s Mot. to Enforce Ex. C at 4.

*Third*, it is telling that the Associated Press' photojournalist was selected to serve in the White House Press Pool on April 17, and that the White House Communications Office expects that the Associated Press will be selected for one of the print pool spots by April 20, 2025. *See* Third Budowich Decl. ¶ 5. These selections are the product of the new White House Press Pool Policy. The Associated Press' rush to involve the federal judiciary in the day-to-day decision making of senior White House officials is improper. There is no sound basis for further relief.

## II. A Deputy Press Secretary's Reference to the Litigation on April 14, 2025 and Seeking Available Appellate Review Fail to Support Any Claim of Noncompliance.

The Associate Press cites a single brief encounter between a non-lawyer White House Deputy Press Secretary and Associated Press staff to support its claim of noncompliance. But this encounter only highlights the Associate Press's overbroad and incorrect reading of the injunction. On the first day the injunction was effective, Associated Press staff demanded entry to the Oval Office—despite not being part of the daily press pool—claiming that the injunction gave them such a right. This despite the fact that the injunction plainly required no such thing. On the first day the injunction became effective, it should not surprise anyone that a Deputy Press Secretary was aware of and mentioned the litigation in response to an inquiry from the Associated Press

when the organization demanded unscheduled access to the Oval Office.  Significantly, according to the account of the Associated Press' representative, the Deputy Press Secretary attributed the non-selection of the Associated Press to in the pool to the rotation system in place on April 14, 2025, rather than the Associated Press' viewpoint.  *See* Declaration of Chris Megerian ¶ 3, Pl.'s Mot. to Enforce Ex. D.  Beyond that, the Deputy Press Secretary was unclear about the impact of the ongoing litigation, *id*. ¶ 5, but he did not indicate any then-present exclusion of the Associated Press from the Oval Office or the press pool based on the Associated Press' viewpoint.  This evidence proffered by the Associated Press confirms that Defendants are fully complying with the injunction.

The Associated Press suggests that because (a) it was not selected for the daily press pool on the first few days the injunction was in effect, and (b) the government has taken an appeal and sought a stay of the injunction pending appeal, Defendants are somehow not in compliance with the Court's injunction.  That is wrong.  The reason for the former is the application of White House press policies in effect on those dates, which imposed no restriction on the access of Associated Press based on its viewpoint.  And it is telling that the Associated Press lacks evidence to the contrary.  As to the latter, the government's representations and declaration should not be doubted, nor should the government be penalized, for pursuing a legal right pursuant to seek appellate review of a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1).  Respectful compliance with the injunction while simultaneously requesting relief from the appellate court are not mutually exclusive, as the Associated Press' motion (at ¶¶ 5–6) implies.

In addition, the Court's preliminary injunction made clear that it did not require the White House to turn back time and return to the days when the Associated Press was "prioritized" or "guaranteed" access or given the "line leader" position at press events.  *See* Mem. Op. & Order,

ECF No. 46 at 4.  Thus, the Associated Press's baseless request that the Court should enforce the injunction—notably, without suggesting how—invites judicial micromanagement of press access at the White House, including the Oval Office. And it does so without meaningful evidence demonstrating impaired access compared to other wire services based on the Associated Press' viewpoint.  The Court should thus reject the Associated Press' attempt to embroil the Court in the daily management of the White House press pool.  That is true under the terms of the existing injunction.  And that is true as a matter of interbranch comity.

Plaintiff's motion is especially unfounded as the White House Press team has gone to exceptional lengths to comply with the Court's order.  That order required the White House Communications Office to fundamentally alter its processes for managing the White House Press Pool.  The Administration has spent considerable time and attention addressing this issue, and has been forced to divert time from pressing matters of national and international importance to do so.

As the motion to enforce reflects, until the novel legal questions on which the Court has granted preliminary injunctive relief are resolved, every time a reporter or photographer from the Associated Press is not admitted to events at the Mar-a-Lago Club, on Air Force One, or in the Oval Office, accusations of viewpoint discrimination will be easy to make and burdensome to refute.  Here, the Associated Press proffers no evidence of viewpoint discrimination in violation of the Court's injunction.  And the evidence proffered by Defendants confirms that they have complied with the injunction in full.

## CONCLUSION

For all these reasons, the Court should deny the motion to enforce the preliminary injunction.

Dated: April 17, 2025
      Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney


By: _____/s/ Jane M. Lyons_____
    JANE M. LYONS, D.C. Bar No. 451737
    Assistant United States Attorney
    BRIAN P. HUDAK
    Chief, Civil Division
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2540 or 202-252-2549

*Attorneys for the United States of America*